**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Mitchra HENDERSON,
Defendant-Appellant.**

No. 49141.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 24, 1985.

Motion for Rehearing and/or Transfer
Denied Oct. 28, 1985.

Application to Transfer Denied
Dec. 17, 1985.

█

John Putzel, Henry B. Robertson, St. Louis, for defendant-appellant.

John M. Morris, William L. Webster, Atty. Gen., Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

This is the second appeal of this case. In *State v. Henderson,* 669 S.W.2d 573 (Mo. App.1984) we reversed the defendant's conviction because of the erroneous admission of evidence. We are now asked to reverse his second conviction because of the erroneous exclusion of evidence.

In this case defendant was found guilty by a jury of robbery first degree and assault first degree and sentenced by the court, as a prior offender, to a total of 45 years' imprisonment. Defendant does not challenge the sufficiency of the evidence.

David Barner worked as a cook at the Lewis Snack Shop. While at work he had some discussion with defendant concerning the possible purchase of a television set. After work Barner, defendant and the latter's friend, Myron McFerrin, went to look at the set and Barner agreed to buy it. The three then traveled to the home of Barner's girlfriend where he obtained $500.00. Subsequently they went back to pick up the television. Defendant and McFerrin left Barner standing on the sidewalk while they went to see if it was an appropriate time to get the television. They returned and told him to put his car in the driveway. He turned to walk toward his car and was shot twice in the back of the head. While lying on the ground his wallet and money were taken from his pocket. Then he was shot again, once in the back and once in the ear. Barner testified that defendant was the one that shot him.

While in the hospital recovering from surgery, Barner identified photographs of the two men. When arrested, defendant told a police officer "he was sorry for what he had done, he only shot the man because McFerrin told him to do it."

On appeal defendant raises only one point. He contends the trial court erred in denying him the right to introduce in evi-

dence, under the prior inconsistent statement rule, a portion of Barner's hospital record wherein he is reported to have denied knowing who shot him or why.

The requisite foundation for impeachment by means of a prior inconsistent statement is clearly delineated in *State v. Denmon*, 635 S.W.2d 345–348 (Mo.1982). "Impeachment may be made only where the witness has been asked the specific question upon which he is sought to be discredited." In *Denmon*, the defendant sought to impeach the identification testimony of a prosecution witness by showing the witness had stated to a lawyer that he could not identify anyone in the house. The witness denied having any conversation with the lawyer. The Supreme Court held that restricting the testimony of the lawyer to whether or not any conversation took place was proper. "Because [the witness] was not asked, on cross-examination, if he had denied his ability to recognize the defendant [the lawyer] could not subsequently testify to that denial. . . . Denying the conversation and the question is not the same as denying that the statement was made." *Id.*

In the instant case, Barner was asked on cross-examination "did you make any statement to anyone at the hospital about this incident?" He responded, "I don't think so." No further questions were asked relative to the purported inconsistent statement. Obviously, the rule enunciated in *Denmon* mandates the conclusion that no adequate foundation was laid for the admission in evidence of the statement in the hospital record, the making of which was never specifically denied.

However, the circumstances of this case preclude the resolution of this issue simply by application of the *Denmon* rule. Defendant argues that his trial attorney was denied the opportunity to lay a proper foundation for the introduction of the prior statement. The basis of defendant's argument is the following colloquy which took place out of the hearing of the jury during the cross-examination of Barner:

MS. HIRZY: I just wanted to clarify on the ruling as far as admissibility in the statement of medical records. Am I going to be allowed to ask him if he made such a statement for the purpose of impeachment and you may make a ruling on that?

THE COURT: You may ask him that question and certainly lay a foundation. But, I will consider any objection that is made to any hospital record when it's brought up.

MS. HIRZY: All right. I just wanted to clarify that.

MR. AUTREY: Just so I'm clear on the Court's ruling. This will be as the Court indicated and she will be allowed to ask him whether he told anyone at the hospital that he didn't know who shot him?

THE COURT: Yes, right.

MR. AUTREY: So, she will be allowed to ask him that question.

THE COURT: *Not in that form*, but she will be able to ask him if he made a statement at the hospital and what was the statement that he made, okay? And, let him give the answer to what he said if he recalls.

Thereafter, Barner was asked the question set forth above and gave the equivocal response. Subsequently, defendant's attorney sought to introduce the portion of the hospital record wherein Barner is reported to have denied knowing who shot him. The trial court sustained the state's hearsay objection and ruled that the statement was not admissible as an exception to the hearsay rule because no foundation had been laid to establish a prior inconsistent statement.

It is apparent from the quoted portion of the transcript that defendant's attorney attempted to lay a foundation for introduction of a prior inconsistent statement in proper form but was precluded from doing so by the court's directive. Indeed, the trial judge acknowledged that the foundational question had been asked "in the form of the court's instruction." With the record in such a state, it would be patently unfair for us to hold defendant to strict

compliance with the formality requirements of *Denmon*. We do not disavow nor disparage these requirements; rather we decline to apply them here only because of the erroneous directive of the trial court.

■ Barner testified that defendant was the one who shot him. The entry in the hospital record that he denied knowing who shot him is facially inconsistent with this statement. It was stipulated that the hospital record was qualified under the Uniform Business Records as Evidence Act, § 490.680, RSMo.1978, thereby eliminating the objection that the record itself was hearsay. The statement within the record is not subject to the hearsay objection because it is offered not for the purpose of showing its truth, but rather to show that a prior inconsistent statement was made, thereby casting doubt upon the credibility of the witness. *State v. Jordan*, 664 S.W.2d 668, 670–71 (Mo.App.1984). Moreover, the basic unreliability of extra judicial statements by a declarant not subject to cross-examination, which underlies the rule against hearsay, is not present where the declarant is present in court, subject to cross-examination and with the opportunity to explain the apparent inconsistency. 3A *Wigmore on Evidence*, § 1018 at 996 (1970); *McCormick on Evidence*, § 251 at 746 (3d ed. 1984). The trial court erred in excluding the entry in the hospital record from admission in evidence.

■ The mere detection of an erroneous ruling on the admission or exclusion of evidence does not end our review. We must also determine if the error was prejudicial so as to warrant reversal. "It is an unfair trial, not an imperfect trial, that requires appellate intervention." *State v. Miller*, 664 S.W.2d 229, 231 (Mo.App.1983). "[A]n imperfect trial is not per se an unfair trial, and every instance of error is not prejudicial error." *State v. Smith*, 534 S.W.2d 604, 608 (Mo.App.1976). We keep in mind that error committed in a criminal case is presumed prejudicial, but that presumption is not conclusive and may be overcome by the facts and circumstances of the particular case. *State v. Ford*, 639 S.W.2d 573, 575 (Mo.1982). Error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong. *Id.* at 576; *State v. DeGraffenreid*, 477 S.W.2d 57, 65 (Mo. banc 1972).

■ Viewed in the perspective of the totality of the evidence in this trial, the exclusion of Barner's denial in the hospital that he knew who shot him is insignificant. He had been acquainted with defendant and McFerrin for some time as they patronized his place of employment. He negotiated with defendant for the purchase of a television set and spent several hours with defendant and McFerrin before the shooting. His denial that he knew who shot him is easily explained by the fact he was shot in the back and did not see which of the two men, who were the only people in the vicinity, fired the shots. McFerrin was in his view when his wallet was taken. By the time of this second trial he was obviously aware of the defendant's admission that he fired the shots. The jury was advised, without objection, that at the scene of the shooting, while in considerable pain, Barner told a police officer he did not know who shot him. His repetition of this denial a short time later on admission to the hospital lends little, if any, additional impact toward casting doubt upon his credibility. This is especially true in view of his positive identification of photographs of the two men made shortly after he recovered his faculties following surgery.

The cross-examination of Barner was not directed toward disputing his identification of the two men he had been with throughout the night, but rather his identification of defendant as one of the two men who returned and told him to bring his car to the driveway just before he was shot. The only defense witness was McFerrin, who had previously pleaded guilty to these offenses and was serving his sentence. He corroborated Barner's testimony in almost every detail except he claimed the third man with whom they had spent the night and who aided him in the robbery was not the defendant, but some unidentified indi-

vidual. However, he admitted naming defendant as his accomplice in an oral statement to the police, a written statement and on videotape. At his guilty plea, under oath, he affirmed that defendant assisted him in robbing Barner and that defendant did the shooting. McFerrin testified he lied on these occasions because, although he and defendant had been "buddies," they had a falling out.

In addition, defendant admitted the shooting at the time of his arrest.

■ The presumption of prejudice arising from the erroneous exclusion of the entry in the hospital record is clearly overcome by the overwhelming evidence of defendant's guilt.

Judgment affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.