STATE of Missouri,
Plaintiff–Respondent,

v.

Dwayne SPROLING,
Defendant–Appellant.

No. 51035.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 10, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 8, 1988.
Application to Transfer Denied
July 26, 1988.

---

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant was indicted by the Grand Jury of the City of St. Louis on two charges of robbery first degree. Section 569.040 RSMo 1978. Count I alleges defendant, acting with another on May 29, 1985, forcibly stole a wallet from Van Henderson and in the course thereof used and threatened immediate use of a dangerous instrument. Count II alleged defendant, acting with another on May 27, 1985, forcibly stole a wallet and U.S. currency from C. Jackson and in the course thereof used and threatened the immediate use of a dangerous instrument. The trial court granted defendant's motion for a severance. Count I was tried to a jury. On the day the jury found defendant guilty of Count I he entered a plea of guilty on the crime charged in Count II. Defendant was tried as a prior offender. He was sentenced to a term of fifteen years on Count I and a concurrent term of fifteen years on Count II. On December 20, 1985 the trial court overruled defendant's motion for a new trial on Count I. A timely appeal was filed on December 30, 1985. Thereafter, in response to defendant's claim that the court erred in not quashing the jury panel under the facts and on the authority of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), this court remanded to the trial court for a hearing on that issue. We now consider defendant's contention that the court erred in permitting two police officers to testify regarding a statement made by defendant after he was identified at a line-up. We also reconsider the *Batson* issue with the benefit of a transcript of the proceedings after remand.

The parties tried the present case in November 1985. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) was decided thereafter. We remanded to the trial court on the *Batson* issue in

March 1987. The trial court held a hearing and reconsidered the *Batson* issue on July 10, 1987, twenty months after the jury trial. At the time of hearing on remand, the trial court and counsel for both sides did not have the benefit of *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). This sequence of events, trial—*Batson*—remand hearing—*Antwine*, will occur in a limited and finite number of cases. We review the facts and issues with this sequence in mind. As a result we have some empathy for counsel and the trial court in their efforts to apply *Batson*. They were required to overcome disabilities including: (1) trial before *Batson*, (2) a lapse of time between trial and hearing, and, (3) *Batson* hearing before *Antwine*.

Defendant entered a plea of guilty on Count II to the same type of crime charged in Count I on the same day that the jury found defendant guilty on Count I. Defendant received concurrent fifteen year sentences as a prior offender. Our Supreme Court has not decided the question of whether to apply the concurrent sentence doctrine adopted by a number of federal circuit courts of appeal and we decline to do so. Application of that doctrine would curtail a full review of the claim of error on Count I. We give attention to the merits of defendant's two claims of error.

The burden of persuasion on a *Batson* complaint "lies with and never shifts from the defendant." *State v. Antwine*, 743 S.W.2d at 63. In order to carry this burden defendant must first establish a "prima facie case which creates a rebuttable presumption that the prosecutor exercised his peremptory challenges in a discriminatory manner." *Id.* at 64. In the present case the state does not contest that defendant made a prima facie case by proof that: (1) he is a member of a cognizable racial group, black; (2) the prosecutor exercised all six of its peremptory challenges to remove members of his race; and, (3) these facts support a presumption that the prosecutor acted in a prohibited and discriminatory manner. The issue becomes whether

the explanations of the prosecutor were case specific and presented credible and sufficient reason to support the finding of the trial court that they were adequate to rebut the presumption created by defendant's prima facie showing. Defendant did respond to the explanations. We consider both explanation and response.

■ We are directed by *Antwine* to reverse and remand only if the fact finding of the trial court that there was no discriminatory practice is "clearly erroneous." We are required to give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Antwine*, 743 S.W.2d at 66. The trial judge in a *Batson* hearing must consider: (1) the nature of the particular case in search of determining whether the racial membership of the jury may benefit the state, given the nature of the charge, the race of victim(s) and witnesses; (2) the manner in which the prosecutor conducts voir dire, including questions asked, or not asked, retention or removal of venirepersons giving the same or similar answers together with whether such venirepersons are retained or stricken; and, (3) an evaluation of the explanation itself. *Antwine*, 743 S.W.2d at 65.

■ With this standard of review in mind and with recognition of the timing of the trial and subsequent development of the law we look to the explanations offered by the assistant circuit attorney.

First, we find that this particular case offered the state an opportunity to benefit by discriminatory practices. Defendant, a black man, was ultimately tried by an all white jury. The crime charged was a violent crime involving the use of a dangerous instrument and theft from a person.

Second, it is difficult to evaluate the sufficiency of the recollection of the trial court regarding the prosecutor's demeanor in conducting the voir dire. The court and prosecutor had the benefit of the transcript prepared for this appeal before remand. The prosecutor had retained brief notes. The prosecutor recalled an incident involv-

ing venireperson, Bernie Scarprilla, who exhibited a hostile attitude toward jury duty which was interpreted to be hostile to the state. Venireperson Mary Primm was rejected as being nonresponsive and too receptive to what Scarprilla was saying. Venireperson Fred McCoo gave answers which were interpreted to be sympathetic with Scarprilla's comments. Defendant's concern that the prosecutor asked Mrs. Primm no questions, or that McCoo's answers were ambiguous or, in fact, favorable to the state because he had voted for the current circuit attorney and had a brother who was a police officer, do not entirely undermine the impressions of the prosecutor. A venireperson may be considered "unresponsive" solely on the basis of impression.

The prosecutor struck one venireperson because she was a prior rape victim. She had been unable to make an identification. Identification was anticipated as an issue during the trial.

Venireperson, Cleaver Abbott, was stricken because of his responses to a lengthy inquiry by defense counsel on the issue of presumption of innocence. The prosecutor developed an impression that this venireperson may have become too closely attached to the presumption. Defendant argues that the inquiry was developed by direct and personal questions similar to those asked of other panelists. Even if this is true, we cannot say that the trial court was clearly erroneous in accepting the explanation.

Venireperson, Earlean Anderson, was stricken because the prosecutor interpreted her employment, teacher's aid, as indicating a possible sympathy toward defendant who was, at the time of trial, twenty years of age. The prosecutor also detected some confusion in the mind of Anderson regarding the nature of an arrest and the conviction of a felony. The strike was motivated by two thoughts. It was not based solely on employment, which, by itself is not necessarily case specific as required by *Batson*.

Venireperson, Bobetta Fuller, was stricken although she was asked no questions by counsel for either side. The prosecutor noted on the jury list an observation that Fuller had "dressed down" and entered a "no" beside her name. The prosecutor explained that she believed dress might reflect a lack of respect for the system. *See, People v. Moss*, 188 Cal.App.3d 268, 233 Cal.Rptr. 153 (1986) (appearance, demeanor and overt actions in court as acceptable explanation).

One alternate black venireperson was stricken on the explanation that because he was planning to go on a vacation he may have become pressured if the case would not conclude by the end of the week.

There is no showing that the alternate jurors selected were required to serve. Hence, no prejudicial result could have flowed from a strike of a black alternate.

Finally, we have the evaluation of the trial court implied in the decision accepting the explanations of the prosecutor as racially neutral. We recall the problem of delay between the time of the trial and the *Batson* hearing. However, our review of the record offers no support for a conclusion that the findings of the trial court on the *Batson* issue were not aided by a personal recall of the events. We do not find the factual findings were clearly erroneous. Apparently, all the requirements placed upon the trial court were respected and applied. Point denied.

Defendant's remaining claim of error asserts the trial court erred in overruling defendant's motions in limine and to suppress statements attributed in the testimony of Detective Thompson and Detective Volmert. The detectives were working together investigating the robbery of May 29, 1985. On May 31, at 10:30 p.m., they conducted a line-up at the Sixth District holdover. Defendant and others were viewed separately by the victim and the witness. They identified defendant. After the line-up, the detectives confronted defendant.

The relevant testimony was admitted over objection. By agreement, the grounds

of objection in the pretrial motions were adopted and the issue heard with the evidence. In the original motion to suppress defendant alleged he "... did not waive his right to remain silent, or his right to counsel, or his right to have counsel appointed for him" and, "interrogation by said police officers did not cease when Defendant indicated that he wished to remain silent and that he desired to have appointed counsel present on his behalf at said interrogation." An Addendum to the motion also alleged the oral response made after defendant was picked out of the line-up "was not voluntary in that the totality of the circumstances indicate that defendant's response was merely part of his attempt to tell the police that he would not wish to make a statement." These pretrial grounds were references to constitutional rights or privileges.

The error preserved in defendant's motion for new trial alleges "[t]he trial court committed reversible error when it overruled defendant's Motion in Limine regarding Count I and allowed the prosecutor to elicit from her witnesses at trial, defendant's response to certain questions asked him by police officers because that response was not an admission against interest." Obviously, the pretrial objection based upon a Constitutional claim of the right to remain silent varies from the point asserted in the motion for new trial, admission against interest. The ground preserved in the motion for new trial is related to a rule of evidence not to a Constitutional infringement which defendant asserted before and during trial and again on appeal. We note the difference but elect to review defendant's claim on the merits.

Defendant has a right to remain silent while under arrest and exercise of that right is not admissible at trial. *State v. Powell*, 682 S.W.2d 112, 114 (Mo.App.1984). However, this rule does not apply where a defendant does not exercise his right to remain silent, but, instead, elects to make a statement. *State v. Van Doren*, 657 S.W.2d 708, 716 (Mo.App.1983). We find in the present case, defendant elected to speak. He waived his right to remain silent. After he made the statement and thereafter declined to speak further and the questioning stopped.

The relevant testimony follows. Detective Thompson testified that after the line-up, he and his partner, Detective Volmert, confronted defendant and *again* advised defendant of his rights. According to the testimony of Detective Thompson, his partner asked defendant "who the second subject was with him the night of the robbery." He answered, "[h]e [defendant] refused to give the name. He said he'd take the rap." Similarly, Thompson also said, "[h]e said—he refused to tell us the other subject's name. He said he'd take the case himself." On cross-examination, counsel for defendant asked Detective Thompson, "[a]nd his statement was to the effect that he would take the case himself and he wasn't going to talk to you or didn't want to talk to you?" Detective Thompson responded, "That's correct."

Detective Volmert testified that defendant was advised of his rights and told he had been identified in the line-up. Defendant was then asked who was with him, who was his accomplice at the time of the robbery. Volmert recalled defendant's answer was, "[h]e told me that he'd take the case himself and he really didn't want to talk to us any further." On cross-examination, Detective Volmert was asked whether he gave defendant a specific question regarding who had been with him and whether his answer was "he would take the case himself and didn't want to talk to you." Both questions were answered in the affirmative.

Defendant testified in his own defense. On direct examination he was asked about the interview with Detectives Volmert and Thompson. The defendant testified he was taken upstairs from the holdover. He recalled Detective Volmert made a statement "... that he knew I couldn't have been assaulting a man and going in his pocket at the same time so I might as well tell him who was with me." Defendant testified that he did not respond. Q. "You didn't say anything?" A. "I didn't say anything."

For a number of reasons defendant's claim that the testimony of officers Thomp-

son and Volmert regarding his claimed statements refusing to identify an accomplice fails. First, defendant testified he made no statement. The claim is inconsistent with his assertion of a violation of a Constitutional right to remain silent and the use of a statement made in violation of such right.

Second, the meaning of the statement is not clear. It was not equivalent to a confession. Defendant was not quoted to have said, "I did it with another and will not disclose his identity." The meaning of the statement was for the jury. It was admissible as an admission against interest because it may have been an admission of guilt.

Out of court admissions are generally admissible, *State v. Walls,* 637 S.W. 2d 812, 813 (Mo.App.1982), even if not an express acknowledgment of guilt. *State v. Bannister,* 680 S.W.2d 141, 148 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). However, the silence of an accused while under arrest is not admissible as substantive evidence, *State v. Powell,* 682 S.W.2d 112, 114 (Mo. App.1984), unless a defendant does not exercise his right to remain silent, but, instead, elects to make a statement. *State v. Van Doren,* 657 S.W.2d 708, 716 (Mo.App. 1983). In the present case there is no factual support for defendant's claim that prior to the statement he exercised his right to remain silent. The statement was not silence. Nor is there any factual basis to support a finding that the statement was involuntary in the sense it was coerced. A statement followed by a mere claim of privilege does not render the statement inadmissible. *State v. Laws,* 661 S.W.2d 526, 529 (Mo. banc 1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1986); *State v. Hollis,* 584 S.W.2d 137, 144 (Mo. App.1979). Point denied.

We affirm.

SMITH and KELLY, JJ., concur.