**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Anthony Ray ROGERS, Jr.,
Defendant–Appellant.**

No. 50615.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 22, 1988.

Application to Transfer Denied
July 26, 1988.

Deborah Lambdin Stockhausen, Henry B. Robertson, Asst. Public Defenders, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Jefferson City, Kevin B. Behrndt, Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Anthony Ray Rogers, Jr., appeals the judgment of conviction after a jury found him guilty of unlawful possession of a concealable firearm in violation of § 571.070 RSMo 1986. The trial court found appellant to be a persistent offender and sentenced him to fifteen years' imprisonment to run concurrently with the twenty year sentence previously imposed in an earlier conviction.

We affirm.

We had affirmed appellant's conviction earlier on April 29, 1986. Our Missouri Supreme Court accepted appellant's application for transfer on September 16, 1986, and subsequently entered its order on March 4, 1987, requiring an evidentiary hearing be held to determine the validity of appellant's constitutional claim challenging the prosecutor's use of its peremptory strikes as discriminatory under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

After the hearing on April 24, 1987, the trial court entered its findings of fact and conclusions of law on July 21, 1987. In response, appellant and respondent filed additional briefs with our supreme court. The supreme court retransferred the cause for our consideration in light of *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987).

Appellant does not challenge the sufficiency of the evidence to sustain his conviction; therefore, we briefly summarize the evidence.

At approximately 1:00 p.m. on December 4, 1984, a radio dispatch to St. Louis police was made concerning a robbery in progress in the 2000 block of Gano Street in the City of St. Louis, Missouri. Two detectives on patrol in the area responded. They turned their patrol vehicle into an alley and saw appellant there. Appellant was carrying a bundle of clothing. Appellant saw the detectives and started to run. As he fled, a handgun fell from the bundle of clothing and bounced a few feet on the ground. Appellant stopped, picked up the gun, returned it to the bundle of clothing, and then entered an adjoining residential yard. Another officer approached appellant from

a different direction and detained him. A search of the yard revealed the bundle of clothing and a .38 caliber handgun. Subsequent to his arrest, appellant told the arresting officer that he had been released from the penitentiary a few weeks earlier.

As part of the state's case, and by separate hearing, evidence was introduced revealing appellant's prior convictions for second degree murder and second degree burglary. Appellant received a sentence of twenty years for the murder and two years on the burglary conviction. He was paroled on November 6, 1984. Based on this evidence, the trial court found appellant to be a persistent offender.

Appellant testified on his own behalf. He denied that he owned either the clothing or the weapon or that he had ever possessed them. Appellant presented two witnesses who testified that in their brief encounter with and in their observation of appellant just prior to his arrest, they never saw him with the clothing or the handgun.

Based on the foregoing evidence, the jury returned its verdict finding appellant guilty. The trial court imposed a sentence of fifteen years, to be served concurrently with the remainder of appellant's twenty-year sentence for second degree murder under his prior conviction. This appeal followed.

Appellant presents two issues for our determination on appeal: whether the prosecution used its peremptory challenges in a racially discriminatory manner and whether one of appellant's prior two convictions used as an element of the offense charged was improperly used to establish appellant's status as a persistent offender.

■ Appellant's first point challenges the jury panel on the basis that the prosecution used its peremptory challenges to strike black jurors contrary to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We review appellant's *Batson* claim in light of the voir dire, the subsequent evidentiary hearing and the trial court's findings of fact and conclusions of law following the *Batson* evidentiary hearing. In *Antwine* our supreme court

set forth the standard for appellate review of *Batson* issues. 743 S.W.2d at 66. Citing *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), our supreme court stated that a finding of discrimination, or a finding of no discrimination, is a finding of fact and that a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. 743 S.W.2d at 66. Thus, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, an appellate court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Anderson*, 105 S.Ct. at 1512; *Antwine*, 743 S.W.2d at 66.

Against this background, we review the trial court's findings concerning the circuit attorney's exercise of his peremptory strikes.

The trial court found that, during appellant's June 1985 trial, the circuit attorney struck seven members of the black race from a venire panel of thirty-six. Of the final jury plus the one alternate, only one juror was black. The brother of the only black juror not struck worked in the office of the circuit attorney. The trial court found that appellant established a prima facie case of discrimination because the state used all its peremptory strikes against blacks. The circuit attorney presented reasons for its use of six of the peremptory challenges; however, the court did not require an explanation for the state's use of its strike against the alternate. The trial court reviewed the reasons given by the circuit attorney for exercising his peremptory challenges. The trial court concluded the circuit attorney's peremptory strikes were neither based on nor motivated by the race of the venire persons challenged.

■ Venireperson Valery Zachary stated she had an uncle currently serving a term of imprisonment in the St. Louis Medium Security Institution. Appellant was on pa-

role when charged with unlawful possession of a concealable firearm. The circuit attorney explained he did not want jurors with incarcerated family members because of the danger they might sympathize with appellant and feel he had served enough time already. The same reason was proferred by the circuit attorney in striking another venireperson, Thomas Hopgood. Hopgood had a cousin who had been in the penitentiary for seven or eight years at the time of appellant's trial.

Appellant attacks the circuit attorney's explanation for striking Zachary and Hopgood. Appellant claims the explanation for striking Zachary and Hopgood applied equally to three non-black panel members Willie Lucille Hittler, Eric Thomas and Patricia Burgin. Specifically, appellant states that, although these white jurors also had relatives with criminal pasts, these jurors were not challenged. Citing *State v. Butler*, 731 S.W.2d 265 at 272[10] (Mo.App. 1987), appellant argues the circuit attorney's actions indicate racial discrimination in the jury selection process.

We note some inconsistency in appellant's inclusion of Thomas. Our review of the record indicates Thomas was the sole black left on the jury panel. We need not discuss him. The relatives of Burgin and Hittler, although convicted of crimes, were no longer incarcerated at the time of appellant's trial, unlike the relatives of Zachary and Hopgood. We conclude that Zachary and Hopgood were not similarly situated to whites not stricken, and that the circuit attorney's explanation for striking them was racially neutral.

■ Appellant also complains of the circuit attorney's use of a peremptory strike to remove Robert F. Henry, Jr., another black juror. Robert Henry's younger brother, although never incarcerated, had been convicted of a crime four or five years prior to appellant's trial. In defending his strike of Henry, the circuit attorney had explained he feared Henry might in some manner or to some degree harbor ill feeling toward the police or that he might compare his brother's offense and disposition of the case involving appellant. The trial court

accepted the foregoing reason as legitimate and racially neutral.

Appellant again emphasizes that Hittler and Burgin, similarly situated whites, were not struck. Burgin's younger brother had been convicted four years ago and received one year's probation. Hittler's grandson had been convicted for driving while intoxicated two years earlier. The record does not disclose whether Burgin's brother or Hittler's grandson were ever incarcerated or what sentence Hittler's grandson received.

We agree that, at first blush, Henry's situation appears similar to that of Burgin and Hittler. However, our supreme court has pointed out that evidence of a failure to strike a similarly situated white juror does not mandate reversal; rather, it is a factor to be considered by the trial court in making its final determination. *Antwine*, 743 S.W.2d at 65; *State v. Taylor*, 747 S.W.2d 150, 153 (Mo.App.E.D.1988). Differences in age, sex and occupation are also factors for consideration. In addition, *Batson* requires the trial judge to embrace a participatory role in voir dire, noting the subtle nuance of both verbal and nonverbal communication from each member of the venire and the circuit attorney himself. *Antwine*, 743 S.W.2d at 64.

The jury list reflects that Burgin was a thirty-six year old white female employed as a clerk at Mercantile Trust with prior jury service. Henry was a twenty-eight year old black male employed as a "Proc Eng" at Monsanto and also had prior jury service. Hittler was a sixty-five year old white woman, retired, who also had prior service. The record also disclosed Henry had been a victim of crime.

*Batson* allows the state to exercise its peremptory challenges on the basis of hunches as long as there is no racial motive. *Antwine*, 743 S.W.2d at 65. That the circuit attorney may have had a "hunch" that this young male juror might compare his brother's treatment to appellants may have been one of many factors the trial court relied upon in reaching its final determination that the basis for Henry's exclusion was not racially motivated. While ap-

pearing similarly situated to Burgin, because they both had younger brothers with criminal pasts, other factors served to sufficiently differentiate them. We are not left with "the definite and firm conviction that a mistake has been committed." *Id.* at 66. We defer to the trial court's conclusion that the strike against Henry was racially neutral.

■ Venireperson Challie Daniels, a forty-five year old nurse at Malcolm Bliss, a state mental institution, was stricken. The circuit attorney defended his strike on three grounds. According to his jury list she had served on a jury before, but she said no when asked if she had. He also stated he routinely strikes persons employed in state-type institutions and he feared that, as a nurse at a state mental institution, she might be sympathetic to the twenty-four year old appellant who had already been imprisoned more than seven years in the penitentiary.

Appellant challenged the neutrality of the state's exercise of its peremptory strike because the circuit attorney did not strike a similarly situated white panel member Christine Kube. Kube was a thirty-five year old student nurse at Jewish Hospital. The circuit attorney had a bona fide concern that Challie Daniels might be more sympathetic, given her occupation at a state mental institution. We find the distinction in their employment a state mental institution versus a private hospital legitimate and prompted by non-discriminatory motives.

■ The circuit attorney also struck venireperson Joseph Ozier. He had a son who had been tried six years earlier and acquitted. As in appellant's case, all the state's witnesses had been police officers. The state's challenge of Ozier for cause was denied, followed by its challenge peremptorily. The circuit attorney stated that Ozier had said he "couldn't say whether the police officers were lying, but that they were at least mistaken." The trial court accepted as reasonable the circuit attorney's apprehension about Ozier's response to testimony by police officers, since his son had been erroneously charged with a crime by police and prosecutors. The circuit attorney had a sufficient objective reason for striking Ozier. *Accord, State v. Thomas,* 749 S.W.2d 11, 12 (Mo.App.E.D.1988).

■ The record reflects that the circuit attorney struck juror Virgil Washington who was sleeping during voir dire. The circuit attorney adjudged him apathetic and inattentive and asked that he be stricken for cause. In further defense of his subsequent peremptory strike, the circuit attorney explained that he routinely struck postal workers, black or white, based on his experience that they were notoriously bad jurors for the state. This is a racially neutral justification that has been accepted by this court before. *See State v. Payton,* 747 S.W.2d 290, 292–293 (Mo.App.E.D. 1988). We find equally persuasive the circuit attorney's assessment of Washington's demeanor in deciding to strike him.

Venireperson Jack Merritt, a retired man of sixty-nine, was the only black of three alternates. The circuit attorney peremptorily struck him and a white person sat as the alternate. At the *Batson* hearing, the trial court did not require the circuit attorney to give a reason for striking Merritt since the non-black alternate did not participate in the deliberation or verdict.

■ We note that the better practice is to require the state to give its reason for striking alternates, because once a defendant has made the initial requisite showing of purposeful discrimination, the prosecutor then has the burden of putting forth race neutral explanations for the strikes used against members of defendant's race. *Antwine,* 743 S.W.2d at 64. Thus, even where alternate jurors are struck, the state must give racially neutral reasons for its actions. *See e.g. State v. Taylor,* 747 S.W. 2d at 153–154. However, we have also observed that, where the alternate was ultimately not part of the jury deciding the case, we need not decide the propriety of peremptorily striking a venireperson from the alternate pool without explanation. *See State v. Williams,* 746 S.W.2d 148, 149 (Mo.App.1988). The same situation existed here where the alternate never served.

Our review of the actual voir dire of juror Merritt further reflects a legitimate basis upon which the circuit attorney may have decided to strike Merritt.

■ Merritt had been a victim of crime several times. On two occasions when police apprehended the fellows who had burglarized his home, he went to court "and they turned them loose. One went back and broke in again". He stated that he "just quit calling the police. Happens so many times. They turn them loose, and there's no need to be ... wasting my time sometimes."

Despite his avowal that he could be fair to everyone in the case, the circuit attorney might readily have inferred that Merritt was dissatisfied with the police and court system's handling of criminal matters. While we reiterate it would have been preferable to have the circuit attorney justify his strike, we are satisfied that the record demonstrates a racially neutral rationale for his peremptory challenge.

The trial court here, although it initially observed that appellant made a prima facie case of discrimination against black jurors, ultimately concluded that the state's peremptory challenges were not racially motivated. *Batson* admonishes that, since the trial court's finding "largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." 476 U.S. at 98, n. 21, 106 S.Ct. at 1724 n. 21; *see also Antwine*, 743 S.W. 2d at 66. We defer to the trial court's assessment. Our review of the record compels the conclusion that the trial court properly determined that the state's use of its peremptory challenges was not racially motivated. Appellant's first point is denied.

■ Appellant's second point states the trial court erred in finding appellant to be a persistent offender because one of the two crimes used for this finding was also used as an element of the instant offense. Appellant seeks relief for resentencing only as a prior offender under § 558.011 RSMo 1986, rather than as a persistent offender. As a prior offender the trial court could have sentenced appellant to a term of two to seven years under § 558.011 RSMo 1986, instead of the extended fifteen years' term as a persistent offender.

Appellant's second point was addressed earlier by Judge Manford in his unpublished opinion on April 29, 1986, when writing as a special judge for this district. We adopt without quotation marks that portion of his opinion which resolves this issue.

Appellant was convicted of violation of § 571.070 RSMo 1986. Section 571.070 provides as follows:

571.070. Possession of concealable firearm unlawful for certain persons—penalty

1. A person commits the crime of unlawful possession of a concealable firearm if he has any concealable firearm in his possession and:

(1) He has pled guilty to or has been convicted of a dangerous felony, as defined in § 556.061, RSMo, or of an attempt to commit a dangerous felony, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a dangerous felony, or confined therefor in this state or elsewhere during the five-year period immediately preceding the date of such possession; or

(2) He is a fugitive from justice, is habitually in an intoxicated or drugged condition, or is currently adjudged mentally incompetent.

2. Unlawful possession of a concealable firearm is a class C felony.

Thus, one of the elements of § 571.070 is proof of incarceration within a period of five years prior to an arrest on the instant charge.

Subsequent to his arrest, appellant advised the arresting officer that he had been released from the penitentiary a few weeks prior to his arrest. By his own testimony, appellant admitted to his previous convictions for burglary and murder, second degree. He also testified to his having been released from incarceration on those charges on November 6, 1984. He was arrested for the instant offense on December 4, 1984. This evidence clearly estab-

lishes the incarceration of appellant within a five-year period of his arrest on the instant charge.

Based on the convictions of the two different felonies of murder and burglary, the trial court found appellant to be a persistent offender under § 558.016 RSMo 1986. Under this same statute, the trial court was authorized to sentence a persistent offender for a class C felony to an extended term not to exceed fifteen years. Section 558.016.6(3) RSMo 1986.

Appellant asserts that the Missouri General Assembly, by its provision that unlawful possession of a concealable firearm is a Class C felony, thereby considered the prior offense and affixed the range of punishment when it enacted § 571.070 RSMo 1986. He further notes that the trial court herein used an element of the offense (his immediately preceding incarceration) to enhance the punishment, and this resulted in a "stacking" and enhancement of guilt. Appellant asserts that an accused convicted of unlawful possession of a concealable firearm under § 571.070 cannot be subject to sentencing which is enhanced by the use of one of the two prior convictions to prove the instant offense under § 571.070. Appellant concludes by stating that the trial court should have found and thus affixed sentence upon appellant's being a *prior* offender, as opposed to a *persistent* offender under § 558.016 RSMo 1986.

Appellant cites *State v. Parker*, 705 S.W. 2d 85 (Mo.App.1985), stating that this court has left this question open and there exists no authority for his proposal. This is correct and it now falls to this court to decide the question.

Although *Parker* did not address the precise question presented here, we did discuss the reasoning expressed in *State v. Arbeiter*, 664 S.W.2d 566 (Mo.App.1983), which ruled that the applicable statutes in *Arbeiter*, [§ 195.200.1(1)(b) and § 558.016] were not mutually exclusive. In *Arbeiter*, we rejected the argument that § 195.200.1(1)(b), containing its own en-

hancement provision, rendered § 558.016 inapplicable. 664 S.W.2d at 570–71. *Arbeiter*, although not dispositive of the issue here, illustrates a case where we held that statutes containing their own enhancement provisions are not mutually exclusive of § 558.016 RSMo 1986 so as to render it inapplicable.

The threshold question is whether the Missouri General Assembly intended its enactment of § 571.070 to be the declaration of a substantive offense or, by its very nature, a sentence enhancement statute.

The limited number of cases decided pursuant to § 571.070 provide no insight to the answer. *State v. Harp*, 680 S.W.2d 297 (Mo.App.1984), affirmed a conviction under § 571.030, RSMo 1986, the concealed weapons statute. In *State v. Robinson*, 680 S.W.2d 292 (Mo.App.1984), appellant was convicted and his conviction upheld on appeal for an offense under § 571.070, but no issue of enhancement was presented even though appellant was a prior felon. None of the more recent cases dealing with § 571.070 address this precise issue.[1]

It is the conclusion of this court that § 571.070 RSMo 1986 creates a substantive offense and is not an enhancement statute. The initial declaration of the statute states: "1. A person commits the crime of unlawful possession of a concealable firearm if he has any concealable firearm in his possession." The section then proceeds to set forth other, but conjunctive, elements which, in combination with possession, establish all the requisite elements of the offense. These other, but conjunctive, elements are set forth in subparagraphs (1) and (2) of paragraph one of § 571.070. Paragraph two then declares: "2. Unlawful possession of a concealable firearm is a class C felony," thus affixing only the classification of the offense and the range of punishment for the offense in and of itself. Nothing within § 571.070 suggests that it is an enhancement provision. We believe it manifest that the General Assembly, by the

1. *See State v. Pruitt*, 741 S.W.2d 118 (Mo.App. 1987); *State v. Pollock*, 738 S.W.2d 531 (Mo. App.1987); *Hayman v. State*, 736 S.W.2d 513 (Mo.App.1987); *State v. Mills*, 735 S.W.2d 197 (Mo.App.1987); *State v. Moton*, 733 S.W.2d 449 (Mo.App.1987); *State v. Wishom*, 725 S.W.2d 627 (Mo.App.1987); and *State v. Bean*, 720 S.W. 2d 21 (Mo.App.1986).

enactment thereof, intended to establish a separate and distinct criminal offense.

Section 558.016 RSMo 1986 clearly differs from § 571.070. The intended purpose of § 558.016 has been determined to be a deterrent to repeated criminal conduct. *See e.g. State v. Pfeifer*, 544 S.W.2d 317, 319 (Mo.App.1976). In analyzing the reasoning behind, and the applicability of § 558.016, language in *Pfeifer* is most enlightening:

> Thus, the analogy between § 564.440 and the Second Offender Act has been recognized judicially. It follows that cases interpreting the Second Offender Act will be persuasive on the issue at hand. The case law interpreting the Second Offender Act has held that the statute does not create a separate and distinct offense, nor permit conviction upon the charge of being a habitual criminal. Proof of the prior conviction is not a substantive part of an offense subsequently committed, and any conviction must be for the offense charged in the information. The Second Offender Act merely provides for enhanced punishment. (citations omitted)

*Pfeifer*, 544 S.W.2d at 319.

*Pfeifer* supports the proposition that a sentence under § 558.016 is one imposed upon a defendant for his most recent conviction, not for any prior felony conviction. The prior felony convictions themselves do not serve as or provide the basis for any actual subsequent conviction.

Neither *Harp* nor *Robinson* disclose the past felony conviction record of either accused with sufficient particularity to be of aid in the instant case. To follow appellant's contention would effectively eliminate or negate one of his prior convictions upon a finding of guilty under § 571.070. Thus, § 558.016 would be rendered meaningless in such situations. This clearly is not the intention expressed in § 558.016 or § 571.070.

It is obvious that the General Assembly intended by its enactment of § 558.016 to establish an extended or enhanced period of incarceration for those persons who, by their actions, commit repeated felony offenses. In other words, the General Assembly was saying to those persons "if you have convictions for prior or persistent felony behavior, society will incarcerate you upon conviction, and for a subsequent offense, for an extended period above and in addition to the sentence prescribed for your present offense." It is obvious that § 558.016 is intended to deter persons from repeated criminal behavior.

On the other hand, enactment of § 571.070 is the establishment of a separate distinct offense. It is possible under § 571.070 that punishment might not be enhanced but merely affixed separately by the trial court under the class C felony classification set forth in § 558.011 RSMo 1986.

It is obvious from our entire criminal statutory law that the General Assembly has been aware, and in fact intended, that a person can be convicted for a substantive offense, and under the conditions prescribed for repeated, offensive conduct can and should be sentenced or punished under or within those statutes both authorizing and prescribing enhanced punishment. This awareness and intent is clearly expressed by § 571.070. If it chose otherwise, the General Assembly could have declared § 571.070 exclusive in its application and not within the applicable provisions of § 558.016. By its election not to do so, it becomes obvious the General Assembly intended § 571.070 to be a substantive offense and to be applicable mutually with § 558.016. It also becomes obvious that § 571.070 is declaring one is guilty of the offense of possession of a concealable firearm, and the same is a class C felony if he has also been incarcerated within a period of five years next preceding the offense. Any person not within the provisions of subsections (1) and (2) of § 571.070, upon proper proof thereof, would properly be prosecuted under § 571.030, RSMo 1986. Section 571.070 creates a separate and distinct substantive offense applicable to those persons whose past or present con-

duct brings them within either or both subsections (1) and (2) of § 571.070, rather than § 571.030 RSMo 1986.

While neither *Parker* nor *Arbeiter* address the precise question herein, the reasoning expressed in both decisions is sound and consistent with the reasons expressed herein and both decisions are supportive of the result reached herein. Appellant has suggested nothing to persuade this court to depart from the reasoning of *Parker* or *Arbeiter*.

To follow appellant's suggestion that at least one prior felony conviction is merged or "used up" for purposes of conviction under § 571.070, and thus the enhancement of punishment under § 558.016 is either limited or not applicable at all, would be to defeat the intended purpose of § 558.016. We do not believe such an interpretation properly reflects the intention of the General Assembly in its enactment of § 571.070.

In summary, it is found that § 571.070 creates a separate and distinct substantive offense and classifies such offense as a class C felony. It is further found that proof of a prior felony conviction or persistent felony conviction, while being a part of the substantive aspect of § 571.070, is not thus rendered inapplicable for the purposes of the application of § 558.016. Stated another way, § 571.070 is not an enhancement statute thereby rendering § 571.070 and § 558.016 mutually exclusive, but rather, § 558.016, where warranted by the circumstances in any given case, remains applicable to a conviction for violation of § 571.070 for the purpose of enhancement of punishment. We find no merit to appellant's second point of error.

This court would be remiss if it failed to note the vigorous and capable defense provided by counsel on appellant's behalf. Appellant was convicted, based on the evidence, for violating § 571.070. The trial court properly and upon substantial proof found appellant to be a persistent offender within the purpose and meaning of § 558.016. The trial court properly enhanced the sentences of appellant within the purview of § 558.016.

The judgment in all respects is affirmed.

KAROHL, P.J., and SMITH, J., concur.