Brook BENTON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 40493.

Missouri Court of Appeals,
Western District.

Oct. 31, 1989.

Joseph H. Locascio, Sp. Public Defender, Kimberley K. Kellogg, Asst. Sp. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

Brook D. Benton appeals a jury conviction of robbery in the second degree and sentence of fifteen years as a persistent offender and denial, after hearing of his Rule 29.15 claim. Benton presents three claims of trial court error: 1) denial of his equal protection claim based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); 2) violation of his sixth amendment right to call witnesses on his own behalf; and 3) violation of his sixth amendment right to present evidence on his own behalf.

On July 16, 1987 at approximately 11:45 a.m., Wendy Paradis and Terry Gilmore, two employees of TG & Y—McCrory's were walking to the Central Bank of Kansas City to deposit $1339.74. The money was in a locked bag concealed by a manila envelope. As they neared the bank and noticed they were being followed, Paradis gave the money to Gilmore to carry to the bank. After they walked past appellant Benton, he began walking behind them. Gilmore sped up but was confronted by a second individual who said "Give me the money." After Gilmore resisted, Benton and three others succeeded in wrestling the money from him, then ran away.

Paradis gave a description of Benton to the police. On August 29, 1987 she saw Benton at a Texas Tom's half a block away from the bank. She called the police at TG & Y—McCrory's and, while waiting, Benton walked past then stopped to wait for a bus. The police arrived and arrested him.

## BATSON CLAIM

■ A reviewing court may not reverse a trial court's decision as to whether the prosecutor discriminated in the exercise of his peremptory challenges unless that finding is clearly erroneous. *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *State v. Rogers,* 753 S.W.2d 607, 609 (Mo.App.1988). The reviewing court must give deference to the trial court's opportunity to judge the credibility of witnesses, *State v. Sproling,* 752 S.W.2d 884, 886 (Mo.App.1988), and if the trial court's decision is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have found differently. *Rogers, supra.*

Benton, a black male, asserts the trial court should have quashed the jury because the prosecutor used four peremptory challenges to exclude blacks from the jury in violation of Missouri Constitution, Article I, Section 18(a) and the equal protection clause of the United States Constitution.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court established the following standards used to determine whether prosecutors exercised their peremptory challenges in a racial discriminatory manner:

> To establish [a prima facie case], the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits [discrimination]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude

> the veniremen from the petit jury on account of their race....

> \* \* \* \* \* \*

> Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors.... [However,] the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause....

*Batson,* 106 S.Ct. at 1723. The burden of persuasion always lies with and never shifts from the defendant. *Sproling, supra.*

■ In this instance, Benton has established a prima facie case. *State v. Antwine,* 743 S.W.2d 51, 65 (Mo. banc 1987). One, he is a member of a cognizable racial group; two, the prosecutor exercised four of his peremptory challenges to remove members of his race; and three, these facts support a presumption that the prosecutor acted in a discriminatory manner. *Sproling, supra.* Therefore,

> the issue becomes whether the explanations of the prosecutor were case specific and presented credible and sufficient reason to support the finding of the trial court that they were adequate to rebut the presumption created by defendant's prima facie showing.

*Id.*

Benton's attack centers around the fact that blacks were struck while similarly situated whites were not. First, the prosecutor asked whether the venire had "a friend or relative that has served or is presently serving time in the penitentiary." Mr. Childress and Mr. Rice answered in the affirmative. Childress, a black male, was struck while Rice, a white male, was not. Second, when asked about identification, both Mr. Turner and Mr. McGrew agreed it was possible to make a mistake in identification. Turner, a black male, was struck while McGrew, a white male, was not. It would seem obvious at first glance that race was a factor in the prosecutor's decision, however, "evidence of a failure to strike a similarly situated white juror does not mandate reversal; rather, it is a factor to be considered by the trial court in mak-

ing its final determination." *Rogers, supra,* at 610.

■ In the case at bar, the prosecutor met his burden of production by presenting race neutral explanations for his peremptory decisions.

> State strikes Number 11, Carlton Turner, who testified ... during questioning, that he felt that people could make mistakes in identification and for that reason he was stricken.
>
> \*　\*　\*　\*　\*　\*
>
> Juror Number 20, Mr. Childress, has indicated he had a brother that has served time in the penitentiary in the past, and we feel that is enough reason to remove him as one of the state's strikes.

The trial court felt that these explanations were race neutral and met the standards set forth in *Batson, supra.* Benton did not attempt to prove that the reasons espoused were pretextual, *Antwine, supra,* and given the strict standard of review, this court cannot say the trial court's finding is clearly erroneous, *Griffin, supra,* as to these particular strikes.

■ Benton raises for the first time on appeal the impropriety of striking Mr. Theodore Morris, a black male. Although the state listed as its reason for striking Morris that he had a nephew in the penitentiary, the record does not indicate the source of that information. Even so, the lack of such a record may be blamed on Benton. The prosecutor had no reason to explain his source of information since Benton did not raise this issue before the trial court. This point was not properly preserved for appellate review.

■ It is also worth noting that the wording and principals of *Batson* suggest that it applies to the situation where a black defendant is tried before an all white jury. *State v. Crump,* 747 S.W.2d 193, 196 (Mo.App.1988). The fact that two blacks sat on the petit jury undercuts any inference of impermissible discrimination. *See State v. West,* 766 S.W.2d 103, 112 (Mo. App.1989); *Crump, supra; United States v. Montgomery,* 819 F.2d 847, 851 (8th Cir.

1987); *United States v. Dennis,* 804 F.2d 1208, 1211 (11th Cir.1986).

For the above reasons the *Batson* claim is denied.

## RIGHT TO CALL WITNESSES AND PRESENT EVIDENCE

■ Benton asserts that his sixth amendment right to call witnesses and to present evidence was violated because the trial judge did not allow the testimony of Officer Truschinger nor the reception into evidence of defense exhibit 11 (eleven), a police report. This, Benton claims, would have shown a prior inconsistent statement made by prosecution witnesses Paradis.

Initially, it should be noted that "[a] trial judge has wide latitude in ruling on whether to admit or exclude evidence adduced by the parties at trial." *State v. Clark,* 711 S.W.2d 928, 932 (Mo.App.1986). Absent a clear abuse of the trial court's discretion, an appellate court will not interfere with a ruling on the admission or exclusion of evidence. *State v. Hoban,* 738 S.W.2d 536, 542 (Mo.App.1987); *State v. Ferguson,* 727 S.W.2d 204, 207 (Mo.App.1987); *Clark, supra.*

Exhibit 11 is the police report taken by Officer Truschinger of Paradis' account of the robbery. Paradis described the assailant as a dark complected, slim man, weighing 150 lbs, 5' 10" tall, around the age of nineteen, wearing a blue hat, blue shirt, and white shorts. The discrepancy which Benton now complains of occurred during trial:

Q: You stated that the man that you passed on the corner of Olive was rather tall and muscular, isn't that right?

A: Yes

Q: What do you consider rather tall?

A: He was I would say approximately six feet tall....

\*　\*　\*　\*　\*　\*

Q: Okay. And in fact, if he (Officer Truschinger) labeled a suspect as Suspect Number Two and said that this person was wearing a blue hat, this is the person you're talking about that you

told him was six foot tall and muscular, isn't that right?

A: No, he definitely had on a black—if it was blue it would be dark, dark blue. It was, from my memory, it was black, the hat and the drape.

Q: And you never told him it was a blue hat?

A: If I told him blue I would have said, I remember either very dark blue or black, very dark blue or black....

\* \* \* \* \* \*

Q: Do you remember if you told Officer Truschinger if the shirt was either very dark blue or black?

A: I believe I told him it was a dark blue or black.

After this phase of questioning, Benton wished to put into evidence Exhibit 11, and to call Officer Truschinger to the stand to show that prior inconsistent statements were made. The court refused, holding that defense counsel "had an opportunity to use the report to impeach the witness, Wendy Paradis, and have done ... an effective job ... [bringing] out where her testimony ... differs from what is reflected in the report.... I believe you have had the opportunity to make effective use of this officer's testimony, and of the report that he referred to in his testimony." This court does not feel this was a clear abuse of discretion.

There is a valid question as to whether there is an inconsistent statement involved. "Some real inconsistency must appear before evidence of alleged inconsistent statements becomes competent." *State v. Dunn,* 731 S.W.2d 297, 300 (Mo.App.1987). In this case, the most that can be said is that if there is an inconsistency, it is very small. The difference in height between 5'10" and 6' is minor, and the difference between dark blue and black also is minor.

Also, defense counsel states that after Officer Truschinger, testified in the state's case and after Paradis testified, it was "obvious" that Paradis made a prior inconsistent statement. If this is true, there can be no error in excluding the evidence or testimony because the alleged inconsistency was before the jury. Other evidence would have merely been cumulative, *see State v. Gilmore,* 681 S.W.2d 934, 940 (Mo. banc 1984), and the trial court saw fit to limit it as such. *State v. Weatherspoon,* 728 S.W.2d 267, 273–274 (Mo.App.1987).

Finally, even if for the sake of argument it could be said the trial court abused its discretion, there would still be no reversal on this issue. "An imperfect trial is not per se an unfair trial, and every instance of error is not prejudicial error" requiring reversal. *State v. Henderson,* 700 S.W.2d 105, 108 (Mo.App.1985). Error may be disregarded as harmless when the evidence of guilt is strong. *Id.* Forgetting for the moment that any discrepancy occurring was in fact slight, Paradis made a positive identification of Benton at Texas Toms a little less than a month and a half after the robbery.

For the above stated reasons, the sixth amendment claims are denied.

The judgment is affirmed.