**STATE of Missouri, Respondent,**

v.

**Mark A. SHELBY, Appellant.**

**No. WD 40854.**

Missouri Court of Appeals,
Western District.

Nov. 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 2, 1990.

Application to Transfer Denied Feb. 13, 1990.

Sean O'Brien, Public Defender, Terri Bakchus, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

LOWENSTEIN, Presiding Judge.

Appellant Mark Shelby was convicted of second degree murder and armed criminal action. He was sentenced as a persistent offender to life imprisonment and twenty years respectively with the sentences to run concurrently. The convictions were obtained following two mistrials. Shelby presents two claims of trial court error: 1) denial of his motion for a new trial on the ground that a juror withheld information

during voir dire; and 2) during jury selection he was denied his Sixth Amendment rights and had an equal protection claim based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Since the sufficiency of the evidence is not raised, the facts supporting the verdict will be summarized. On April 19, 1987, Terry Posey was shot and killed in the parking lot of Skateland on East Bannister Road. A series of altercations earlier in the evening resulted in Shelby loading a gun, confronting a group, and then firing the fatal shot.

■ Shelby's first point of error is that juror Rittell intentionally withheld information asked of him during voir dire. It is the duty of prospective jurors to answer fairly and truthfully all questions during voir dire so attorneys' challenges can be intelligently exercised. *State v. Shackley,* 750 S.W.2d 99, 101 (Mo.App.1988). The decision as to whether a juror intentionally concealed information during voir dire is left to the trial court's discretion "unless the appellate court is able to conclude from the record that an abuse of discretion unmistakably occurred." *State v. Martin,* 755 S.W.2d 337, 339 (Mo.App.1988). It must be noted, however, that every failure by a potential juror to respond to a question during voir dire does not automatically merit a new trial. Only where 1) the ground for disqualification of a juror is actually explored on voir dire; 2) complaining counsel has no knowledge of the juror's deception; and 3) the juror intentionally conceals the truth, a new trial is awarded. *Id.* at 449–40; *State v. Endres,* 698 S.W.2d 591, 595 (Mo.App.1985).

In the present case, the information withheld was that Rittell, juror # 14 in this the third trial, is the brother of the Division 8 court reporter who transcribed the proceedings in Shelby's first trial. The questions asked during voir dire which Shelby asserts should have elicited such an answer are "Does anybody on the jury panel know anybody that you believe to be an employee of the Jackson County Prosecutor's Office?" and "Does anybody know anything about [the occurrence at Skateland] ... by

having somebody tell you about it other than the news media?"

Assuming without deciding the ground for disqualification was sufficiently explored and that counsel had no knowledge of Rittell's deception, this court cannot find that Rittell *intentionally* concealed the truth.

> Intentional nondisclosure of information requested of a juror on voir dire occurs where there exists no reasonable inability to comprehend the information asked of the juror and the juror *actually remembers* the experience *or* the experience was of such significance that his purported *forgetfulness is unreasonable.*

(Emphasis added), *Martin,* at 340. There is no evidence in the record that Rittell intentionally concealed the truth. There is no showing that he actually remembered that his sister transcribed Shelby's first trial, nor is this information of a type that can be considered unreasonable to forget. *See, e.g., Martin,* at 340. *State v. Endres, supra,* at 595–96. Coupled with the fact that Shelby does not contend Rittell had actual knowledge, only "possible prior knowledge," it cannot be said the trial court abused its discretion. *Martin,* at 339. Point one is denied.

In his other point Shelby seeks a reversal for the state using a peremptory strike on one of the two blacks on the venire. During voir dire juror Hearn, a black, indicated he didn't believe he could make up his mind, "to prove him innocent or not guilty." Hearn later said his difficulty would be in assessing the death penalty.

He first claims a Sixth Amendment violation of the right to have a fair cross section of the community on the jury. This allegation was not preserved in the new trial motion. More importantly, an impropriety in the use of peremptory strikes has not been cognizable under the Sixth Amendment, but has been addressed under equal protection.

Shelby's main contention under this point of error concludes he was denied equal protection of the law. A reviewing court may not reverse a trial court's decision as

to whether the prosecutor discriminated in the exercise of his peremptory challenges unless that finding is clearly erroneous. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *State v. Rogers*, 753 S.W.2d 607, 609 (Mo.App.1988). If the trial court's decision is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse it even if, had it been sitting as the trier of fact, it would have found differently, *Id.*

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court established the following standards used to determine whether prosecutors exercised their peremptory challenges in a racially discriminatory manner:

> To establish [a prima facie case], the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits [discrimination]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race....
>
> \*   \*   \*   \*   \*   \*
>
> Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors.... [However,] the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause....

*Batson*, 106 S.Ct. at 1723. The burden of persuasion always lies with and never shifts from the defendant. *State v. Sproling*, 752 S.W.2d 884, 886 (Mo.App.1988). ▮ In the instant case, Shelby has established a prima facie case. *State v. Ant-*

*wine*, 743 S.W.2d 51, 65 (Mo. banc 1987). One, he is a member of a cognizable racial group; two, the prosecutor exercised one of his peremptory challenges to remove a member of his race; and three, these factors support a presumption that the prosecutor acted in a discriminatory manner. *Sproling, supra.* Therefore, "the issue becomes whether the explanations of the prosecutor were case specific and presented credible and sufficient reason to support the finding of the trial court that they were adequate to rebut the presumption created by defendant's prima facie showing." *Id.*

▮ Here, the prosecutor met his burden of production by presenting a race neutral explanation for his peremptory decision.

> We have struck Mr. Hearn ... for the reason I believe that in response to a question of the whole panel as to whether he could sit in judgment and decide the guilt or innocence of another human being, Mr. Hearn replied that he could not make such a decision. I think at the bench, he made a different answer to that question but the point remains, I think the question was clear in first instance and I decided to strike him because this case has resulted in two hung juries and I certainly don't want anybody on this jury panel who can't make up their mind. Secondarily, who can't understand a fairly plain question in the first place.

The trial court felt this explanation was race neutral and met the standards set forth in *Batson*. See *Benton v. State of Missouri*, 779 S.W.2d 319, 321–322 (Mo. App. Oct. 31, 1989). Given the standard of review, this court cannot say the trial court's finding is clearly erroneous. *Griffin, supra.*

Shelby also complains that "the state allowed at least three persons to actually serve on the jury with the same trait" that led to the striking of Mr. Hearn. However, Shelby does not indicate who these jurors are so it is difficult to understand his argument. In any case, "evidence of a failure to strike a similarly situated white juror

does not mandate reversal; rather, it is a factor to be considered by the trial court in making its final determination." *Rogers*, at 610.

 Finally, the wording and principles of *Batson* suggest that it applies to the situation where a black defendant is tried before an all white jury. *State v. Crump*, 747 S.W.2d 193, 196 (Mo.App.1988). The fact that a black sat on the petit jury undercuts the inference of impermissible discrimination. *See Benton*, at 322; *State v. West*, 766 S.W.2d 103, 112 (Mo.App. 1989); *Crump, supra, United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir. 1987); *United States v. Dennis*, 804 F.2d 1208, 1211 (11th Cir.1986). Point two is denied.

The judgment is affirmed.