**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Eric S. HART, Defendant–Appellant,**

No. 57628.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 15, 1991.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Feb. 20, 1991.

Application to Transfer Denied
April 9, 1991.

Charles M. Shaw, James Jay Knappenberger, Charles A. Wiethop, Bradley S. Dede, Christopher P. Simms, Shaw, Howlett & Knappenberger, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANE, Judge.

A jury convicted defendant Eric S. Hart of attempted rape in violation of § 564.011 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. He was sentenced to five years for the attempted rape and three years for armed criminal action, the sentences to be served consecutively. Defendant appeals from the judgment of the trial court. We affirm.

The evidence adduced at trial, viewed in the light most favorable to the verdict,

discloses that, for a few weeks prior to April 10, 1988, defendant carried a woman's wig, duct tape, rope, a knife and a plastic bag in his car. On April 10 he drove to the parking lot of Chesterfield Mall and waited. After an hour a young woman he had never seen before drove up, parked her car and went into the mall. He decided that she would be "the one." He waited for her to return to her car. When she came back he put the wig on, placed the knife in his sock and put the rope, which he had tied in a loop, and a package of condoms in his pocket. He thought he had also put the plastic bag in his pocket, but had not. He put some short pieces of duct tape on his jacket sleeves so they would be accessible to tape the victim's mouth. He testified that he intended to use the rope to tie her with and the bag to place over her head so she would not be able to see him as he left. He testified that the knife was to be used in his getaway.

Defendant approached the young woman as she reached her car and grabbed her. In the struggle he knocked her to the ground. She offered her purse to him but he did not take it. He pinned her to the ground, kept trying to cover her mouth and screamed at her to shut up. She struggled to get away. During this confrontation the knife fell out of his sock. A female witness heard the screams and saw defendant struggling with the victim on the ground. She saw defendant's knife on the ground about four to five feet away from him, picked it up and yelled at defendant to "get off" the victim. Defendant got up and ran away.

At the same time a male witness and his friend also heard the screams and saw defendant on top of the victim. They chased defendant as he ran away and tackled him. They tied him up with the rope they found in his pocket, and, along with other bystanders, held him until the police came. The witness testified that defendant told them that he was going to rape and kill the victim.

Defendant told the police, however, that he was not going to rape the victim, but was going to tape her mouth, tie her hands

and push her onto the floor of the car and talk to her with the hope that she would have sex with him voluntarily.

Defendant was convicted and sentenced for attempted rape and armed criminal action. This appeal followed. Defendant raises eight points on appeal which we will address in the order raised.

 Defendant first argues that the trial court erred in denying his motion in limine to disqualify the state's witness, Dr. Terrance Kukor, from testifying because his appointment to examine defendant was not proper under § 552.030 RSMo 1986 in that he was not a private practitioner nor the designee of the Department of Mental Health. A trial court's ruling on a motion in limine is interlocutory in nature and is thus not appealable. *State v. Hemphill*, 669 S.W.2d 633, 635 (Mo.App.1984). A ruling on evidence is only preserved when it is made at trial at the time the evidence is offered. *Id.* Point One is denied.

 Defendant next asserts that the trial court erred in not sustaining his objection to allowing Dr. Kukor to testify as an expert because he was not a licensed psychologist in the State of Missouri at the time he examined defendant. Dr. Kukor testified as an expert witness for the state on rebuttal. He testified to his opinion that defendant was competent to stand trial and that defendant was not suffering from a mental disease or defect which would impair his ability to appreciate the wrongfulness of his conduct.

At the time he examined defendant in December, 1988, Dr. Kukor had been employed by the Missouri Department of Mental Health for one and one-half years. He had a bachelor's degree in psychology from Marquette University and master's and Ph.D. degrees in clinical psychology from Miami University. He had completed all requirements for his Missouri license except for a 200 question examination. At the time of trial he was a licensed psychologist and certified as a forensic examiner in the State of Missouri. He received his license in May, 1989 and was certified in September 1989.

█ We find Dr. Kukor's lack of a Missouri license at the time of examination went solely to the weight of his testimony and not to his competency to testify as an expert. *State v. Duckett,* 706 S.W.2d 241, 243 (Mo.App.1986). The test of expert qualification is whether he has knowledge from education or experience which will aid the trier of fact. *State v. Mallett,* 732 S.W.2d 527, 537 (Mo. banc 1987), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). The qualification of an expert is a matter resting primarily in the sound discretion of the trial court. *Id.* Dr. Kukor's qualifications were sufficiently established. He had a Ph.D. in psychology, practiced full-time in the field and had conducted approximately 90 court-ordered evaluations to determine criminal responsibility. He had testified to these as an expert on five or six previous occasions. We find no abuse of discretion. Point Two is denied.

█ For his third point defendant claims the trial court erred in denying his motion to suppress physical evidence seized from his automobile. He contends this evidence was obtained in violation of his constitutional rights. In order to attack the validity of the search and the admissibility of the fruits of that search on appeal, defendant must not only have filed a motion to suppress, but he must also have kept the question alive by asserting timely objections to the admission of such evidence at trial and by raising the matter in his motion for new trial. *State v. Anderson,* 698 S.W.2d 849, 851 (Mo. banc 1985). In his point on appeal defendant challenges only the trial court's ruling on the motion to suppress. No reference is made in the point or in the argument to any objection made by trial counsel or any error made by the trial court in the reception of the disputed evidence. This would ordinarily be fatal to the consideration of this point. The record, however, does indicate that a timely objection was in fact made to the reception of this evidence which was preserved in the motion for new trial. Although the error was not properly raised, we will exercise our discretion and review the matter on its merits for plain error under Rule 30.20.

There was no error. Defendant signed a consent to search form authorizing the search of his vehicle. A warrantless seizure is valid under the fourth amendment if made with proper voluntary consent. *State v. Lingar,* 726 S.W.2d 728, 736 (Mo. banc 1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). Defendant does not argue that his consent was not voluntary. Point Three is denied.

█ For his fourth point defendant argues that his tape-recorded confession was inadmissible because it was made in violation of his right against self-incrimination and it was involuntary. His motion to suppress the statement was denied and, over objection, the statement was played to the jury. In analyzing this claim we must determine whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. Once a defendant properly questions the voluntariness of his pretrial statement, the state has the burden of proving by a preponderance of the evidence that the statement was voluntary. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). The test for determining voluntariness is "whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *Id.* Absent a showing of special circumstances, the state need only make a prima facie showing of voluntariness. *State v. Thomas,* 596 S.W.2d 409, 412 (Mo. banc 1980); *State v. Biddy,* 748 S.W.2d 794, 798 (Mo.App.1988).

█ Defendant contends his confession was involuntary because his will was overborne by mental coercion. He argues that the facts that he had no prior arrests, that he was insecure and self-conscious and that he was questioned in close quarters were circumstances which combined to overcome his free will.

At the hearing on the motion to suppress, Sergeant Terry Roberts of the St.

Louis County Police Department testified that he interviewed defendant in an interview room at the detective bureau. The room was small and contained a table and several chairs. Roberts was dressed in a suit and tie. Lt. John McGrady was also present. One of defendant's hands was handcuffed to the table. He informed defendant of his *Miranda* rights by giving him a copy of them to read along as they were being read to him. As Sgt. Roberts read each of defendant's rights to him, Roberts asked defendant to initial the number. After all of them were read, defendant signed a written waiver of his rights. Sgt. Roberts testified that he did not make any threats or promises to defendant. The written waiver specifically stated: "I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." Sgt. Roberts testified that at the time of the interview defendant was calm, courteous and soft spoken. He did not seem to be upset or appear to be on alcohol or drugs. Defendant thereafter made a tape-recorded statement. The defendant presented no evidence at the hearing.

We must affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its finding. *State v. Baskerville*, 616 S.W.2d 839, 843 (Mo.1981). Defendant's written acknowledgement that he understood his rights and the fact that he thereafter answered questions adequately evidenced a waiver of his rights, including his right to remain silent and his right to have counsel present. *Burnside v. State*, 473 S.W.2d 697, 700 (Mo.1971). Defendant did not testify and offered no evidence regarding the voluntariness of his statement. The state made a prima facie showing of voluntariness. *State v. Biddy, supra*, 748 S.W.2d at 798.

No special circumstances were shown. No facts were elicited that would support a finding that the interrogation was of such a nature that defendant's will was overborne. Defendant's claim that he was insecure and self-conscious is not significant. The exclusionary rule is directed to coercive police conduct. The constitution does not protect confessions which are solely the result of a defendant's emotional condition or personality traits. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986). There was no allegation that the detectives exploited defendant's personality traits. Defendant did not establish either that the fact he was handcuffed or the fact that the interrogation room was small were circumstances which overcame his free will. Nor did defendant show his lack of prior arrests contributed in any way to making his confession involuntary. Point Four is denied.

■ For his fifth point defendant asserts that the trial court erred in admitting evidence which he contends was seized from his home in violation of his constitutional rights because he did not voluntarily consent to the search. Defendant moved to suppress the seized items and objected to their admission at trial. At the hearing on the motion to suppress, Sgt. Roberts testified that after defendant made the taped statement, he signed a consent to search form, accompanied police officers to his apartment and let them in with his key. No threats or promises were made to induce defendant to give his consent. The consent to search form which defendant signed said, "I give my consent voluntarily. I have not been threatened, nor have any promises been made to me to obtain my consent."

■ Whether a consent to a search is voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 863 (1973). Factors which may be considered include:

the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud on the part of the officers, the acts and statements of the consenter, and other matters comprising "the totality of the circumstances".

*State v. Reese,* 625 S.W.2d 130, 132 (Mo. banc 1981) (citing *State v. Rush,* 497 S.W.2d 213, 215 (Mo.App.1973)).

Only two officers were in the interview room when the consent was given. *State v. White,* 770 S.W.2d 357, 360 (Mo.App. 1989). No threats or promises were made to induce defendant to consent. *Id.* Defendant executed the consent form in writing. He accompanied the officers to his apartment and let them in with his key. The trial court's finding that the consent was voluntary was supported by the evidence. Point Five is denied.

■ For his sixth point, defendant contends the trial court erred in denying his motion for acquittal on Count I at the close of the state's case and in submitting "Instruction ___" to the jury. This point has no merit. Defendant introduced evidence after his motion for acquittal at the close of the state's case was overruled. This evidence was specifically directed to the elements of Count I, the charge of attempted rape. He thus waived any claim of error based on that ruling. *State v. Maxson,* 755 S.W.2d 277, 280 (Mo.App. 1988). Furthermore we find no plain error. There was sufficient evidence to support the conviction of attempted rape, in particular that defendant's conduct constituted a substantial step toward the commission of the offense of rape and that defendant engaged in that conduct for the purpose of committing a rape.

■ Defendant failed to preserve any error on the submission of "Instruction ___". It is axiomatic that to preserve a claim of error with respect to an instruction, the instruction must be set out in full in the brief. *State v. Young,* 661 S.W.2d 637, 640 (Mo.App.1983). The sole reference to this unidentified instruction in the argument is one sentence: "Furthermore it was erroneous to submit jury instruction as to attempted rape when no evidence supported the finding of such." Nothing was preserved for review. Point Six is denied.

■ For his seventh point defendant contends that the trial court erred in overruling defendant's motion for judgment of acquittal at the close of the state's case as to Count II and in "submitting a jury instruction on same" on the grounds that there was insufficient evidence of the offense of armed criminal action. This point suffers from the same problems as the sixth point. Defendant waived his claims of error by putting on his own evidence after his motion for acquittal was overruled. *Maxson, supra,* 755 S.W.2d at 280. No reference to any jury instruction was made in the argument, nor was the challenged instruction set out. Thus no error was preserved for review. *Young, supra,* 661 S.W.2d at 640.

■ There was no plain error. It is a legitimate inference deducible from the evidence that defendant put the knife in his sock with the intention of using it in the commission of the attempted rape. The fact that the attempt did not progress to the point of necessitating the use of the knife by defendant does not negate the inference. *State v. Dinkins,* 508 S.W.2d 1, 5 (Mo.App.1974). The fact that the knife fell out of defendant's sock during the struggle does not prevent the elements of the crime from being established. The knife would have still been accessible to defendant had a rescuer not intervened. Point Seven is denied.

■ For his eighth point defendant contends that the trial court erred in not granting his motion for acquittal on the basis of mental disease and defect and in not submitting the issue to the jury. We disagree. First, the issue of defendant's claim of a mental disease or defect was a factual issue for the jury. § 552.030.6 RSMo 1986. It is not a matter of law to be determined on a motion for acquittal. *State v. Lee,* 654 S.W.2d 876, 880 (Mo. banc 1983).

> Even in the face of substantial expert medical evidence that the accused is suffering from a mental disease or defect excluding responsibility at the time the crime was committed, and absent contradictory or countervailing expert medical evidence offered by the state, the statutory presumption of sanity remains and carries the issue of mental disease or defect excluding responsibility to the trier of fact for resolution.

*Id.* at 881. The trial court did not err in overruling the motion for acquittal.

Next, defendant asserts the trial court erred in refusing to submit his Instruction C to the jury. Instruction C is identical to MAI–CR3d 308.03 and covers the issue of diminished capacity. Under the doctrine of diminished capacity, proof of a mental derangement short of insanity may be allowed as evidence of a lack of deliberate design or premeditation. *Smith v. State*, 784 S.W.2d 855, 858 (Mo.App. 1990). The instruction on diminished capacity is only to be given "if requested by defendant and if supported by evidence of mental disease or defect relevant to the existence of a required culpable mental state." MAI–CR3d 308.03, Notes on Use. It is not error to refuse an instruction that lacks evidentiary support. *State v. Stewart*, 714 S.W.2d 724, 727 (Mo.App.1986).

In refusing Instruction C, the trial court found, "all the evidence in the case is that defendant's cognitive functions were at all times intact and that he was capable of forming the requisite intent to commit these offenses." This finding was supported by the evidence, including the testimony of both of defendant's psychiatric witnesses, Dr. David Lipsitz and Dr. Thomas Lucas. Dr. Lipsitz did not determine whether defendant had a mental disease or defect. He did find defendant was in touch with reality, intelligent and not suffering from delusions or hallucinations. Dr. Lucas testified that defendant fantasized about raping a woman; that there was no evidence of delusions or hallucinations; that defendant understood the wrongfulness of his act; that he knew what he was doing when he went to the mall parking lot and approached the victim; that defendant had no trouble with thinking and reasoning and that he was able to form the intent to commit a crime. Point Eight is denied.

The judgment of the circuit court is affirmed.

REINHARD, P.J., and STEPHAN, J., concur.