STATE of Missouri, Respondent,

v.

William E. REYNOLDS, Appellant.

and

William E. REYNOLDS,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 73782.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1991.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

CHARLES SHANGLER, Special Judge.

The defendant William E. Reynolds was found guilty by the jury of separate counts of burglary in the first degree [§ 569.160, RSMo 1986] and armed criminal action [§ 571.015, RSMo 1986]. The defendant was sentenced by the trial court as a class X offender to a term of thirty years imprisonment on the burglary conviction and to a concurrent sentence of ten years on the armed criminal action conviction. There is no appeal from the burglary conviction. The defendant seeks to reverse the armed criminal action count on the ground that the prosecution failed to prove the offense.

The defendant appeals also from the denial without evidentiary hearing of his post-conviction motion for relief on the ground that the failure of appointed counsel to file an amended motion was a presumptive violation of Rule 29.15(e) and entitles him to

be heard on that issue. *See Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991).

■ The appeals were to the Court of Appeals, Eastern District. The court declined review of the direct appeal of the armed criminal action conviction under the concurrent sentence doctrine. The applied doctrine treats as redundant the review of more than one count of a multiple count conviction with concurrent sentences where the conviction of one count was reviewed and found valid and the unreviewed convictions would not reduce incarceration nor have foreseeable adverse legal consequence for the appellant. W. LaFave & J. Israel, *Criminal Procedure* § 26.5(b) (4th ed. 1985). The resort to the doctrine to decline review is at the discretion of the appellate court. *Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969); *State v. Spicuzza,* 806 S.W.2d 719, 721 (Mo.App.1991).

We ordered transfer of the case because of the general interest and importance of the validity of the concurrent sentence doctrine as a practice of criminal appellate procedure, a question that has not been definitively addressed by this Court. Rule 83.02.

## THE CONCURRENT SENTENCE DOCTRINE

■ The concurrent sentence doctrine is an anomalous extension of a common law practice of federal criminal procedure already in discard.[1] The doctrine was introduced into American criminal jurisprudence by the United States Supreme Court in *Claassen v. United States,* 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966 (1891). In that case the accused was convicted on several counts of an indictment but given a single general sentence. The United States Supreme Court drew upon the English common law rule derived from Lord Mansfield to hold "as settled law in this court ... that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only." *Id.* at 146–47, 12 S.Ct. at 170.

Then, in *Pierce v. United States,* 252 U.S. 239, 40 S.Ct. 205, 64 L.Ed. 542 (1920), the United States Supreme Court applied the *Claassen* rationale to a conviction that involved concurrent sentences. There was no explanation why the *Claassen* presumption that the court imposes a general sentence on the good count only, so that review of the other counts is superfluous, applies to concurrent sentences specifically imposed on each separate count.[2] *Pierce* suggests only that in cases where one of several counts is valid, a concurrent sentence under an invalid count "adds nothing to [the] punishment." *Id.* at 252–53. The concurrent sentence doctrine was again applied in *Hirabayashi v. United States,* 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), to find it unnecessary to consider questions as to one count where the conviction was sustained on another count. The doctrine, albeit without other rationale than that an invalid count does not add to the punishment, thereafter became entrenched in the

1. The practice in the federal system already discouraged and in the process of discard was that of the imposition of a general sentence on multiple counts of a criminal conviction. *See* 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 527 (1982); *Benson v. United States,* 332 F.2d 288 (5th Cir.1964); *United States v. Henry,* 709 F.2d 298, 311 (5th Cir.1983). It is a practice our state procedures discountenance altogether. A consolidated or general sentence, one that does not specify the punishment imposed under the separate counts, does not result in a final judgment and, hence, precludes judicial review. *State v. Gonterman,* 588 S.W.2d 754 (Mo.App.1979).

2. An historical sketch of the concurrent sentence doctrine is drawn in *Benton v. Maryland,* 395 U.S. 784, 788, 89 S.Ct. 2056, 23 L.Ed.2d 707 et seq. (1969), and is more amply treated in Comment, *The Federal Concurrent Sentence Doctrine* 70 Colum.L.Rev. 1099 (1970), and Comment, *Benton v. Maryland: A Further Extension of the Rights of the Individual in Criminal Proceedings,* 18 Kan.L.Rev. 309 (1970).

federal appellate criminal procedure.[3]

It was then, in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), that the United States Supreme Court openly acknowledged that "[o]ne can search through these cases, and related ones, without finding any satisfactory explanation for the concurrent sentence doctrine." *Id.* at 789, 89 S.Ct. at 2059. It was "as a rule of judicial convenience," the court observed, that "[t]he concurrent sentence rule may have some continuing validity." *Id.* at 791, 89 S.Ct. at 2061. The court in *Benton* made the point that additional convictions [as distinct from the sentences they carry] " 'do in fact entail adverse collateral legal consequences.' " *Id.* at 790, 89 S.Ct. at 2060. Thus, the continuing validity of the concurrent sentence doctrine as a rule of judicial convenience assumed, the discretion as to its use by a court of review must be guided by the adverse collateral legal effects that the unreviewed conviction engenders. *Id.*

The possible collateral legal consequences of conviction that *Benton* mentions are the enhancement of punishment under state recidivist statutes and the use of the conviction for impeachment at a future trial. The impact on pardon and parole, attendant social stigma, loss of civil rights, ineligibility for licensing under state laws regulating professions and occupations, and other disabilities from criminal conviction are also factors that appellate courts consider to come to a principled exercise of the discretion to review under the concurrent sentence doctrine. *See also, State v. Hasnan*, 806 S.W.2d 54, 56 (Mo.App.1991); *United States v. McKenzie*, 414

F.2d 808 (3d Cir.1969); *United States v. Vargas*, 615 F.2d 952 (2d Cir.1980); *United States v. Kirk*, 723 F.2d 1379 (8th Cir. 1983). A court, even under the doctrine, will not pretermit review of the additional count where the circumstances suggest that the errors alleged as to that count spilled over to prejudice the verdict in the reviewed count. *United States v. Hines*, 256 F.2d 561, 563 (2d Cir.1958); *Chavez v. United States*, 387 F.2d 937, 939 (9th Cir. 1967).

The influence of the concurrent sentence doctrine in the federal courts receded after the *Benton* decision. The doctrine, never a conspicuous incident of appellate review in the state courts, nevertheless has come under stricter scrutiny since *Benton.* Missouri is numbered among those few states that resort to this device of appellate review. The others, by count, are Florida, Maryland, Washington and Wyoming.[4] The Eighth Circuit of the United States Court of Appeals, after a succession of opinions that approved the doctrine despite misgivings, joined the courts that, in light of the collateral adverse consequences of conviction, "have long expressed doubt of the propriety of applying the concurrent sentence doctrine in cases on direct appeal," and declined to apply the doctrine. *United States v. Bass*, 794 F.2d 1305, 1311 (8th Cir.1986). The significance of that evolvement is that the concurrent sentence doctrine, as a principled theory of appellate criminal review in Missouri jurisprudence, rests its validity on *United States v. Moore*, 555 F.2d 658, 661 (8th Cir.1977), now placed in question by *Bass. See State v. Davis*, 624 S.W.2d 72, 77 (Mo.App.1981).

**3.** *See* A. Emanuel, *The Concurrent Sentence Doctrine Dies A Quiet Death—Or Are the Reports Greatly Exaggerated?* 16 Fla.St.U.L.Rev. 269 (1988); 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 527 (1982).

**4.** Pennsylvania has consistently refused to apply the doctrine, as have Rhode Island, West Virginia and Wisconsin. Colorado and Georgia, after *Benton*, have repudiated their previous resort to the doctrine to decline review of a concurrent count in light of the collateral legal consequences that attend conviction. *See Villafranca v. People*, 194 Colo. 472, 573 P.2d 540, 542 (banc 1978), and *Atkins v. Hopper*, 234 Ga. 330,

216 S.E.2d 89, 91 (1975). A few states, such as Arizona, have halted between nonacceptance and acceptance, but most of them have not treated with the doctrine.

A general statistical and analytical summary of the regard for the doctrine, both in the federal circuits and in the state appellate courts, is given in A. Emanuel, *The Concurrent Sentence Doctrine Dies A Quiet Death—Or Are the Reports Greatly Exaggerated,* 16 Fla.St.U.L.Rev. 269 (1988). The narrative as to the federal courts is found at pages 283 through 294. The state courts are treated at pages 307 through 310.

The Ninth Circuit Court of Appeals, long a steadfast supporter of the doctrine, peremptorily rejected any further adherence. The en banc court in *United States v. De Bright*, 730 F.2d 1255 (9th Cir.1984), recapitulated the concurrent sentence doctrine as "only a rule of judicial convenience" whose "discretionary use is justifiable only if the unreviewed conviction has 'no adverse collateral legal consequences' for the convicted" person. *Id.* at 1258. The opinion remarked that the ability of a court to discover all the specific adverse consequences of a conviction before determining whether to apply the doctrine was doubtful. But even so, the exploration of the possible consequences before allowing a conviction to stand without review would be so time-consuming as to render the notion of judicial economy, the only justification for the doctrine, illusory. Thus, the prior application by the court of the doctrine was "only a determination that no collateral consequences were apparent," a method of decision that placed the risk of the court's want of prescience "on the party who will, without present or future review, suffer from the mistake." *Id.* The judicial time is better spent, the court concluded, by addressing the merits of all convictions on appeal. This procedure not only ensures that no person will suffer because of the inability of the court on appeal to forecast the future effects of an unreviewed conviction, but also protects the interest of society in holding a criminal to account for each conviction unless there is legal reason to set it aside. *Id.* at 1259.

In addition to all else, as the court noted, continued adherence to the doctrine violates the statutory right of every federal criminal defendant "to have his or her conviction reviewed." *Id.* Since that right of appeal is from the judgment of conviction and not from the penalty of conviction, the concurrent sentence doctrine compromises that statutory right. *Id.*

The concurrent sentence doctrine, although acknowledged in Missouri decisions for more than a decade as a rule of judicial discretion in the review of criminal convictions, has yet to be given authoritative definition. The doctrine was introduced to Missouri jurisprudence in *State v. Morgan*, 592 S.W.2d 796 (Mo. banc 1980), but by dictum.[5] The Court explained the doctrine, in terms of the decision of the United States Supreme Court in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), as a rule of judicial convenience, and in those terms, that proper application entailed regard for the possible collateral legal consequences of the unreviewed conviction. *Morgan* noted those consequences as the use of prior felony convictions to enhance punishment and to impeach character in future trials. It concluded that the case was not an occasion for the discretionary application of the doctrine.

The doctrine, as such, was adopted into Missouri law by the Ccourt of Appeals, Western District, in *State v. Davis*, 624 S.W.2d 72 (Mo.App.1981), and applied to decline appellate review. It cited *United States v. Moore*, 555 F.2d 658 (8th Cir. 1977), as authority for the doctrine, without mention of the decision of the United States Supreme Court in *Benton* or of our decision in *Morgan*. It defines the doctrine, in paraphrase of *Moore*, as the discretion of a court of review to "pass on the

---

**5.** In *Morgan*, the defendant was found guilty by a jury of separate counts of second degree felony-murder and stealing over $50, and concurrent sentences were imposed. The defendant contended that the stealing felony was a lesser included offense of the felony-murder, and so the double prosecution and conviction on both violated the double jeopardy clause of the United States Constitution. This Court agreed, vacated *both* judgments, and remanded *both* for resentencing. It was in this posture of claim of trial error that, on review to this Court, the prosecution urged exercise of discretion under the concurrent sentence doctrine "and refuse to review any claim concerning double jeopardy." *Id.* at 804. It was evident in the exposition of the opinion, and of course inescapable by the very nature of the question for decision, that review, although of two separate counts, was unitary. The premise that justifies the concurrent sentence doctrine as a device of judicial convenience is that a conviction that bears a concurrent sentence has already been found valid by the court of review, or has gone unchallenged. *See also, United States v. Johnson*, 700 F.2d 699, 701 (11th Cir.1983). In principle, there was no scope in *Morgan* to apply the doctrine.

validity of less than all counts in a multi-count conviction if a ruling in appellant's favor as to the challenged counts would not reduce the penalty imposed as to the valid conviction." *State v. Davis,* 624 S.W.2d at 77. That definition, however, omits the adverse collateral legal consequences concomitant that completes the contours of the doctrine under *Benton, Morgan,* and even *Moore* as a rule of judicial discretion and convenience.

It is that stunted definition that has since become the rule of decision in the court of appeals.

The doctrine was next mentioned in *State v. Neal,* 661 S.W.2d 844 (Mo.App. 1983), an opinion of the Court of Appeals, Western District, not for decision but only parenthetically. It was next mentioned and employed in *State v. Supinski,* 779 S.W.2d 258 (Mo.App.1989), another opinion of the Court of Appeals, Western District. That case quoted the stunted definition of the doctrine in *Davis,* without mention of adverse collateral legal consequences or other rationale or authority, to peremptorily deny review. Then, in *State v. Harper,* 778 S.W.2d 836 (Mo.App.1989), the Court of Appeals, Southern District, presented with the *Davis* definition of the concurrent sentence doctrine, rejected such a rule in favor of review on the merits. *Id.* at 838.

The other decision that acknowledges or gives effect to the doctrine is from the Court of Appeals, Eastern District, *State v. Spicuzza,* 806 S.W.2d 719 (Mo.App.1991). *Spicuzza* cites the definition of the doctrine in *Davis* and its application in *Davis* and *Supinski* to decline review of the additional count with the concurrent sentence. There was no mention or consideration of the adverse collateral legal consequences of a conviction left unreviewed. It is for the first time in the *Spicuzza* dissent by Judge Grimm that the sufficiency of the concurrent sentence doctrine, as formulated and practiced in our courts of review, was challenged.

The concurrent sentence doctrine, although acknowledged in our decisions for more than a decade as a rule of judicial convenience in the review of criminal convictions, has not been applied in true principle nor proven its convenience. In that course of time, the doctrine has been mentioned six times, and used four times to forgo review.[6] The incidents of application have been peremptory exercises of "discretion" in the service of "judicial convenience," unbalanced by concerns for the adverse collateral legal consequences of erroneous, but unreviewed, conviction.

It is evident that the judicial convenience actually served by the doctrine as practiced is slight. It is slighter still were the time, needed to satisfy the court that the unreviewed conviction harbored no adverse collateral consequence, actually spent. It is time more aptly spent by a judiciary in addressing the merits of all convictions on appeal, as is appropriate to our system of criminal justice. "Every person who has been found guilty of a crime is entitled to appeal and have all contentions of error which are properly preserved for appellate review to be considered and ruled." *State v. Jones,* 365 S.W.2d 508, 513 (Mo.1963). *See also* § 547.070, RSMo 1986.

To deny review of the armed criminal action conviction in this case because Reynolds did not challenge the burglary count on appeal, as the doctrine allows, would be to subject him to disabilities and legal consequences unique to that offense. Second and third convictions for armed criminal action carry greater mandatory minimum sentences—five to ten years respectively, rather than the three years prescribed for the first such offense. The eligibility for parole or other such release is also directly affected by the number of convictions for that offense. Section 571.015, RSMo 1986. It is a risk of adverse consequences from an unreviewed conviction that in justice the defendant should not be made to bear.

**6.** The concurrent sentence doctrine was given mention in yet one other reported Missouri decision, *State v. Sproling,* 752 S.W.2d 884 (Mo. App.1988). In that case, the Eastern District of the Court of Appeals simply acknowledged the currency of such a doctrine among "a number of federal circuit courts of appeal," noted that our Supreme Court had not yet decided its efficacy, and declined to give it application. *Id.* at 886.

■ The prior cases that have sanctioned the use of the concurrent sentence doctrine are overruled. We reject the concurrent sentence doctrine as a practice of judicial discretion to avoid review of criminal convictions.

## THE ARMED CRIMINAL ACTION COUNT

The information by separate count charged Reynolds with armed criminal action in the commission of the burglary in the first degree felony in violation of § 571.015, RSMo 1986. Reynolds contends on appeal that the evidence was insufficient to convict him of armed criminal action and that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence.

The evidence most favorable to the conviction shows that in the early morning of September 7, 1987, Andrae and Nell Bopp, an elderly couple, were asleep in the bedroom of their home. He was awakened by a scratching noise from the aluminum storm window, four or so feet from the bed. He saw the top of the head of someone trying to push the storm window out of the way. He then retrieved a gun from the dresser drawer and called the police. Apparently, the intruder could not raise the bedroom window, and as Mr. Bopp waited in the hallway, he heard noises of prying and breaking at the back door. There was jimmying at the door, but it would not open, so a man broke the glass out of the back door, reached inside, unlocked the door, and two men came inside. Mr. Bopp shot the two men, one moaned, and they both ran outside. They dropped a screwdriver and a pair of glasses on the floor. Police officers arrested Reynolds and Jones in the Bopp backyard as they were running away.

Officers searched Reynolds and found a knife in a sheath in his boot, "hooked inside the boot." They inspected the interior and found broken glass inside the Bopp home

and on the back porch area, several bullet holes in the walls, a pair of men's reading glasses and the screwdriver. The screwdriver was found on the kitchen floor of the home. There were pry marks on the storm window of the bedroom, but the witness could not recall any on the doors. The officer testified that the screwdriver found "was the screwdriver used by the men who broke into the house."

Armed criminal action § 571.015.1 provides: "[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action ..." The "dangerous instrument or deadly weapon" described in the information was, "to-wit: a knife."

■ The prosecution does not seriously contend that the knife was used to gain the unlawful entry or in the course of the burglary, nor does the prosecution seriously contend that the screwdriver used in the burglary was a dangerous instrument or deadly weapon. Indeed, no evidence allows an inference that the knife found on the person of defendant Reynolds was ever out of its sheath hooked within the boot during the burglary episode or that either of the Bopp couple was ever aware of the knife. Nor was there any evidence that any jimmy or pry mark was that left by a knife. The evidence does allow an inference that the screwdriver was used to attempt or gain entry, but not an inference that it was a dangerous instrument or deadly weapon and used as such in the burglary.[7]

The actual theory of the prosecution is that the evidence that the knife was on his person, and so accessible to Reynolds during the burglary, suffices to prove the armed criminal action, whether he used the knife or not. Thus, the argument goes, "even if [Reynolds] did not remove the knife from his boot prior to his arrest,

---

7. The definition of *dangerous instrument* for purposes of the Criminal Code is given by § 556.061(9), RSMo 1986: *"Dangerous instrument* means any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." The Code definition of *deadly weapon* includes a "switchblade knife" or "dagger," but not a screwdriver. § 556.061(10), RSMo 1986.

sufficient evidence still existed to warrant his conviction for armed criminal action."

The prosecution supports that argument of sufficiency for conviction with a single decision, *State v. Hart*, 805 S.W.2d 234 (Mo.App.1991). In that case, the armed criminal action charged was in commission of an attempted rape. The defendant gave testimony that for a few weeks before the attempted rape, he kept some duct tape, rope, a knife and a plastic bag in his car that he intended to use to assault a woman, not yet targeted. The knife was to be used in the getaway. He found the opportunity at a shopping mall, placed the knife in his sock and the rope and some condoms in his pocket. During the assault on the woman, she struggled, and the knife fell out of his sock. He ran away and was captured by bystanders. One of them testified that the defendant told him that he was going to rape and kill the victim.

*Hart* sustained the conviction for armed criminal action on the rationale that the evidence of *intention* to use the weapon in the commission of a felony, even without actual use, suffices to prove the offense, as long as the weapon is accessible for use.

> It is a legitimate inference deducible from the evidence that defendant put the knife in his sock with the intention of using it in the commission of the attempted rape. The fact that the attempt did not progress to the point of necessitating the use of the knife by defendant does not negate the inference.... The fact that the knife fell out of defendant's sock during the struggle does not prevent the elements of the crime from being established. The knife would have still been accessible to defendant had a rescuer not intervened.

*Id.* at 240.

*Hart* does not hold, as the prosecution argues, that evidence that a weapon is on the person of the actor during the commis-

sion of the felony, and so accessible for use in that enterprise, suffices to prove the armed criminal action offense. Nor does it hold that evidence of a weapon on the person of the actor and accessible during the commission of the felony, even though not used, proves the intention to use the weapon. *Hart* holds, rather, that where the intention of the felon to use the weapon is otherwise shown, the fact that the weapon, still accessible, was not used does not "negate the inference [of the intention to use it]," or "prevent the elements of the crime from being established." *Id.* at 240. The rationale in *Hart*, that evidence of the intention to use a weapon, without actual use, suffices to prove armed criminal action, stands alone. Nor has it been followed.

We assume as valid for purpose of decision that, as *Hart* implies, the intention to use a deadly weapon—or other culpable mental state—is an element of the armed criminal action section.[8] We determine, nevertheless, that *Hart* is irrelevant to the argument here and otherwise misconstrues the armed criminal action statute. *Hart* is irrelevant to the argument here because there is no contention that the intention to use a weapon is an element of the offense. *Hart* misconstrues the armed criminal action statute because § 571.015, in clearest terms, imposes its penalty upon those "who use dangerous instruments or deadly weapons in the commission of felonies." *The New Missouri Code: A Manual for Court Related Personnel*, ch. 16.2 (1979). The explicit language could hardly be simpler or more expressive of the legislative intent: "[A]ny person who commits any felony ... by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." It means that the *use* of a dangerous instrument or deadly weapon is an element of the crime. *State v. Tyler*,

---

8. It remains an open question whether a culpable state of mind is required to prove the armed criminal action offense enacted by § 571.015, RSMo 1986. *See State v. Miller*, 657 S.W.2d 259, 261 (Mo.App.1983), and *per contra State v. Helm*, 624 S.W.2d 513, 517 (Mo.App.1981). *See also State ex rel. Bulloch v. Seier*, 771 S.W.2d 71

(Mo. banc 1989), opinion concurring in result, Blackmar, J., at 76. The open question, however, is whether the statute requires "a culpable state of mind of *acting*." [emphasis added] *State v. Elam*, 779 S.W.2d 716, 718 (Mo.App. 1989).

587 S.W.2d 918, 927 (Mo.App.1979). It means also that the intention to use, without actual use, is not enough to convict under the statute. That, except for *Hart,* is the uniform understanding the appellate decisions impart to the statute.

There was no evidence that Reynolds committed the burglary by, with, or through the use of the knife or other deadly weapon. The conviction for armed criminal action cannot stand and is reversed.

### APPEAL FROM DENIAL OF THE POST–CONVICTION MOTION

The reversal of the conviction for armed criminal action renders moot the petition under Rule 29.15 for relief from that conviction.

The judgment and conviction on the count for armed criminal action is reversed. The order denying the motion under Rule 29.15 to set the conviction or armed criminal action is vacated.

ROBERTSON, C.J., and RENDLEN, COVINGTON, and BLACKMAR, JJ., concur.

HOLSTEIN, J., concurs in part and dissents in part in separate opinion filed.

BENTON, J., concurs in part and dissents in part and concurs in concurring in part and dissenting in part opinion of HOLSTEIN, J.

THOMAS, J., not participating because not a member of the Court when case was submitted.

HOLSTEIN, Judge, concurring in part and dissenting in part.

I concur with that portion of the majority opinion rejecting the concurrent sentence doctrine. However, I respectfully dissent from that portion of the opinion which concludes that the evidence is insufficient to support a conviction for armed criminal action.

The majority is somewhat unclear as to what is meant by "actual use" of a weapon as contrasted with "intention to use" a weapon. The majority seems to construe § 571.015.1 to require that there must have been an actual attack or an overt threat of attack using a weapon. I believe this construction of § 571.015.1 is incorrect. The primary rule of statutory construction is to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent. *Trailiner Corp. v. Director of Revenue,* 783 S.W.2d 917, 920 (Mo. banc 1990). Where the language of a statute is clear and unambiguous there is no room for construction. *Community Federal Savings and Loan Ass'n v. Director of Revenue,* 752 S.W.2d 794, 798 (Mo. banc 1988); *State v. Evers,* 777 S.W.2d 344, 345 (Mo.App.1989). Each word of a statute should be given meaning. *State ex rel. Missouri State Bd. for the Healing Arts v. Southworth,* 704 S.W.2d 219, 225 (Mo. banc 1986).

The requirement of an attack or threatened attack using a weapon is not found in the statute and is inconsistent with the plain language of the statute. Use of a weapon is only one of the words describing the prohibited conduct. Someone "who commits any felony ... with ... [the] assistance, or aid of a dangerous instrument or deadly weapon" is guilty of the crime of armed criminal action. *§ 571.015.1.* The words "assistance" and "aid" are synonymous, meaning help, succor, encouragement or an auxiliary. *Black's Law Dictionary* 63, 111 (5th edition 1979). Given the plain meaning of these words, the intent of the legislature was to discourage felons from arming themselves during commission of their crimes and to impose a separate criminal sanction against a felon whose criminal purpose is advanced by ready access to certain injurious devices. To hold otherwise empties the words "with ... assistance and aid" of any meaning.

The defendant in this case unlawfully entered an occupied building *with* a knife on his person. It may be reasonably inferred that the knife advanced any one of several aspects of the intruder's criminal purposes. For example, the knife may have aided by bolstering the intruder's confidence to enter a home in which the victims were sleeping. The knife may have aided by providing a means to impose the

intruder's will on the victims and overcome resistance. Finally, the knife was a ready source of assistance to make good the intruder's escape. The fortunate chance that the knife was not exhibited and that no one was actually stabbed by the knife does not mean the intruder was without the weapon's aid or assistance. In sum, the evidence was sufficient for a jury to conclude the burglary was committed with the aid and assistance of the knife. That is armed criminal action.

I do not find this case distinguishable from *State v. Hart*, 805 S.W.2d 234 (Mo. App.1991). I believe the *Hart* decision is well reasoned and controlling here. *See also Forshee v. State*, 763 S.W.2d 352, 356–57 (Mo.App.1989).

I concur with the first part of the majority opinion rejecting the concurrent sentence doctrine, but dissent as to that part involving armed criminal action. I would affirm that conviction.