**STATE of Missouri, Plaintiff–Respondent**

v.

**Brian McDANIEL, Defendant–Appellant.**

No. 27572.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 25, 2007.

Daniel J. Ross, Ray E. Sousley, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joshua N. Corman, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Brian McDaniel (defendant) was convicted, following a jury trial, of murder in the first degree. § 565.020.[1] This court affirms.

On July 3, 2001, the body of Kendace DeCarlo was found at her residence in Newton County. She had sustained two gunshot wounds to the head. An autopsy determined the cause of death as "massive brain trauma secondary to gunshot wound." The police officer who responded to the scene, Officer Allen, found three unused rounds of RP .380 cartridges on the front porch. He found two RP .380 shell casings on the porch just outside the front door near the victim's body.

Detective Jimmy Wallace, an officer with the Joplin Police Department, contacted Val Moss, Brad Moss, and Michael Wheeler. Detective Wallace was told that the three of them had come to the Moss residence that was located near the victim's residence about 9:45 the night of the shooting; that a white car was parked in front of the Moss residence when they arrived. A black male was seated in the driver's seat. They saw another black male run down an alley and get in the car.

Detective Wallace developed photo lineups for the three witnesses to view. All three witnesses identified defendant from one of the photo lineups as one of the persons they saw near the Moss residence the evening of the murder. They also identified a picture of a white Saturn rent-

---

1. References to statutes are to RSMo 2000.

al car to which defendant had access as being very similar to, if not the same as, the car they saw at the Moss residence. The three witnesses identified a picture of Don Overton from another photo lineup as the other person they saw the night of the murder.

In July 2002, Detective Wallace went to Tulsa, Oklahoma, where defendant lived. He was present when a search warrant was executed at defendant's apartment. The officers executing the search warrant seized a box of .380 ammunition. It was not a full box and contained different brands of ammunition. RP was the dominant brand.

Defendant told the officers that he was an ex-boyfriend of the victim; that his intentions had been to get back with her. Defendant said at the time of the murder he had been "out dealing dope that night, in and out of his apartment." He told the officers that about a week and a half before the murder, he learned the victim "was not only cheating on him, but that she was selling her new lover's dope along with his dope." Defendant told the officers that during his relationship with the victim, she had sold his dope; that he believed she was murdered because of her dope dealing and her relationship with her new boyfriend.

Israel Ward had known defendant since the early 1990s. At the time of the trial of this case, Ward was in federal custody after pleading guilty to conspiracy to distribute cocaine. His sentencing was pending. He had pleaded guilty pursuant to a negotiated plea agreement. The plea agreement provided for a recommendation of a 15–year sentence. One of the terms of the plea agreement was that Ward would cooperate with any federal, state, or local government in prosecuting a crime about which he had knowledge.

Ward told the jury about business dealings he had with defendant involving "[d]rug distribution." He said defendant was upset with the victim because of her relationship with a new boyfriend; that defendant told Ward defendant was going to get Donald Overton to kill her. Ward said defendant told him that a .380 semi-automatic handgun would be used because it "was a throw away, a gun that was untraceable to anybody." Ward said defendant had shown him the gun. Ward talked to defendant after the victim had been killed. Ward told the judge and jury, "[H]e let me know that it had been handled, and that Overton had pulled the trigger."

## Point I

Defendant asserts four points on appeal. Point I is directed to the trial court's denial of a motion to exclude defendant's statement made to Detective Jim Wallace in July 2002. Defendant contends it was error to deny the motion "because the statement was taken ... as part of plea negotiations between the Newton County prosecutor and counsel for the defendant...."

▮ Point I asserts trial court error in the denial of a pre-trial motion to exclude the statement made to Detective Wallace; the denial of a motion to suppress evidence. Point I does not claim error by the trial court in admitting testimony at trial regarding what defendant said. In order to attack the validity of the admission of evidence to which a motion to suppress evidence was directed, the question to which the motion was directed must be kept alive by asserting a timely objection to its admission at trial and by raising the matter in a motion for new trial. *State v. Hart,* 805 S.W.2d 234, 238 (Mo.App. 1991). The issue must further be presented in the brief on appeal. *State v. Guidor-*

*zi,* 895 S.W.2d 225, 228 (Mo.App.1995). Here, an objection was made at trial, albeit that the motion for new trial complained only of the denial of the motion to exclude defendant's statement.

A similar defect occurred in *State v. Hart, supra.* There, as in this case, the point on appeal challenged only the trial court's ruling on the motion to suppress. The Eastern District of this court identified the deficiency but, nevertheless, addressed the admissibility of the evidence. *Hart* explained:

> No reference is made in the point or in the argument to any objection made by trial counsel or any error made by the trial court in the reception of the disputed evidence. This would ordinarily be fatal to the consideration of this point. The record, however, does indicate that a timely objection was in fact made to the reception of this evidence which was preserved in the motion for new trial. Although the error was not properly raised, we will exercise our discretion and review the matter on its merits for plain error under Rule 30.20.

805 S.W.2d at 238. Apparently in *Hart* there was sufficient record from which the court could determine whether the trial court's ruling was erroneous. That is not the situation in this case. Defendant provided no transcript to this court of the evidence adduced at the trial court's hearing on the pre-trial motion to suppress the statement about which defendant now complains.

The record on appeal is required to contain all of the record of proceedings and evidence necessary to determine the questions presented by the appeal. Rule 30.04(a). It was defendant's duty to secure the necessary record of proceedings that is required to determine the issue about which he complains. Rule 30.04(c). Without a transcript of the hearing on which defendant's claim of error is based, this court cannot determine the issue asserted in Point I. *See Grafton v. City of Plattsburg,* 167 S.W.3d 731, 734 (Mo.App. 2005). Point I is denied.

*Point II*

Point II states:

> The trial court erred in allowing a witness and the prosecutor to quote a statement allegedly from a co-defendant who was not present and would not testify, because the statement was hearsay, extremely prejudicial to defendant, and the maker of the statement was not available for confrontation and cross-examination.

Rule 30.06 requires briefs by appellants in criminal cases to meet the same requirements Rule 84.04 imposes in appeals of civil cases. This includes the requirement that the statement of facts and the points relied on be prepared as provided in Rule 84.04. *State v. Dodd,* 944 S.W.2d 584, 587 n. 2 (Mo.App.1997); Rule 30.06(c). Rule 84.04(d) prescribes what points relied on shall contain. Rule 84.04(d)(1) explains:

> Where the appellate court reviews the decision of a trial court, each point shall:
>
> (A) identify the trial court ruling or action that the appellant challenges;
>
> (B) state concisely the legal reasons for the appellant's claim of reversible error; and
>
> (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in *[identify the challenged ruling or action ]*, because *[state the legal reasons for the claim of reversible error ]*, in that *[explain why the legal reasons, in the*

*context of the case, support the claim of reversible error ].*"

"Abstract statements of law, standing alone, do not comply with this rule." Rule 84.04(d)(4).

■ Point II does not comply with requirements of Rule 84.04 in that it does not explain why, in the context of the case, the legal reasons it asserts support its claim of reversible error. Point II neither identifies the nature of the statement it attributes to "a witness and the prosecutor" that it claims was hearsay nor identifies the witness about whom it complains.

■ "Violations of Rule 84.04 are grounds for a court to dismiss an appeal." *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo. App.1999). "Whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary." *Bamber v. Dale Hunt Trucking,* 107 S.W.3d 489, 490 (Mo. App.2003), *quoting Hampton v. Davenport,* 86 S.W.3d 494, 496 (Mo.App.2002). "That discretion is generally not exercised unless the deficiency impedes disposition on the merits. 'A brief impedes disposition on the merits where it is so deficient that it fails to give notice to [the court] and to the other parties as to the issue presented on appeal.'" *Keeney v. Missouri Hwy. & Transp. Com'n,* 70 S.W.3d 597, 598 n. 1 (Mo.App.2002), *quoting Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo.banc 1997).

Defendant's opening paragraph of the part of his argument directed to Point II that he characterizes as "[r]elevant facts" identifies the statement of the prosecuting attorney about which he complains. In the state's opening statement, the prosecuting attorney's opening remark regarding the evidence the state would present was, "I shot her until she was dead," at which time a bench conference was held. Defendant's trial attorney objected to the statement on the basis of hearsay, asserting it was a statement by "a co-Defendant who will not be testifying in this case." The prosecuting attorney contended the remark he recited was made in the presence of defendant; that defendant's failure to deny or otherwise contest the statement was a tacit admission and admissible. After advising the attorneys that the court was not ruling on whether the evidence would be admitted and after hearing further arguments of counsel, the trial court overruled defendant's objection and denied a request on behalf of defendant for mistrial.

The prosecuting attorney continued the state's opening statement saying, "I shot her until she was dead. That's what Donald Overton, a Red Mob Gangster, and this man's partner, had to say about today's murder case." This court discerns this as the statement of the prosecuting attorney to which Point II refers. As such the deficiencies in Point II do not impede this court's ability to dispose of that part of Point II on the merits.

■ Immediately prior to the state's opening statement, the trial court read Instructions No. 1 and 2, patterned after MAI–CR3d 302.01 and 302.02, respectively, to the jury. The jury was informed by Instruction No. 1 that it was their "duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence." Instruction No. 2 included the admonition to the jury that "[t]he opening statements of attorneys are not evidence. Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the Court." As explained in *State v. Payton,* 895 S.W.2d 283, 285 (Mo.App. 1995), "Instructions No. 1 and 2 were proper and adequate in that they are required in all criminal cases. Rule 28.02(c). *See* Notes on Use, MAI–CR 3d 302.01 and

302.02. When a jury receives proper and adequate instructions, it is presumed the jury will properly follow the instructions as given." *See also State v. Williamson,* 836 S.W.2d 70, 73 (Mo.App.1992). There was no showing to the contrary. Defendant's complaint of error in Point II directed to the prosecuting attorney's opening statement is denied.

 The other complaint in Point II is that "a witness" was allowed to quote a statement of a co-defendant who would not testify. As part of a single point on appeal, this part of Point II complains of a second perceived failing of the trial court (having first complained of the opening statement of the prosecuting attorney). As such, Point II is multifarious. Points containing multifarious allegations of error do not comply with Rule 84.04. *Atkins v. McPhetridge,* 213 S.W.3d 116, 120 (Mo. App.2006). Further, no witness is identified as a person who testified as Point II suggests, nor is there a reference to a part of the record that includes testimony as Point II alleges was given. This impedes this court's ability to resolve the issue Point II attempts to raise with respect to an unnamed witness.

> Where a brief fails to comply with the applicable rules and does not sufficiently advise the court of the contentions asserted and the merit thereof, "the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency." *Thummel v. King,* 570 S.W.2d 679, 686 (Mo.[banc] 1978). It is not the function of an appellate court to search the record to identify possible errors and research any issues so revealed. *Id.* In fairness to Respondent, we cannot become Appellant's advocate.

*Huffman v. SBC Services, Inc.,* 136 S.W.3d 592, 593–94 (Mo.App.2004). The part of Point II directed to testimony of an unnamed witness is dismissed. Point II is denied.

### Point III

Point III contends the trial court erred in denying defendant's motion to disqualify contrary to § 478.240.2(2) in that "the trial judge had heard the defendant's waiver of preliminary hearing" and was, therefore, precluded from conducting the trial in this case "and the trial judge showed a clear bias against the defendant requiring recusal."

 Defendant sought change of judge, for cause, by motion filed August 11, 2005, entitled, "Motion for Change of Judge for Cause or in the Alternative for a Hearing to be Presided by a Different Judge." By docket entry dated "8–12–05" that motion was denied. Point III is directed to the trial court's denial of that motion. Defendant first contends the trial court erred in denying the motion "because the trial judge had heard the defendant's waiver of preliminary hearing." Defendant contends that § 478.240.2(2) precluded Judge Selby from being assigned to try the case; that Judge Selby should, therefore, have granted the motion and thereby recused.

This case was filed in Newton County. Newton County is part of the 40th Circuit. The other county within the 40th Circuit is McDonald County. Judge Selby, who presided at the jury trial of this case, is one of two associate circuit judges in Newton County. According to the docket sheets that are part of the record on appeal, on May 6, 2005, the case was assigned to Judge Selby for preliminary hearing. The docket sheets further reflect that on June 17, 2005, the date for which preliminary hearing was scheduled, defendant waived preliminary hearing and was ordered to

appear for arraignment June 20, 2005, in the circuit judge division of the Circuit Court of Newton County. On July 14, 2005, the Supreme Court of Missouri transferred Judge Selby to hear the case pursuant to Article V, Section 6, Missouri Constitution. That same day Judge Selby granted change of venue and ordered the case transferred to the Circuit Court of McDonald County, the other county in the 40th Circuit.

Section 478.240.2 provides that the presiding judge of the circuit has authority "to assign any judicial or court personnel anywhere in the circuit, and shall have the authority to assign judges to hear such cases or classes of cases as the presiding judge may designate. . . ." The statute limits that authorization in certain instances, including that the presiding judge is not authorized to make an "[a]ssignment of a judge to hear the trial of a felony case when he has previously conducted the preliminary hearing in that case." § 478.240.2(2). Defendant claims that this provision required the trial judge, Judge Selby, to recuse.

Defendant's claim in this regard fails. The presiding judge of the circuit did not assign Judge Selby to hear defendant's felony trial. Judge Selby's assignment was made by the Supreme Court. The assignment was not made pursuant to § 478.240.2. Regardless, Judge Selby did not conduct a preliminary hearing in this case. No preliminary hearing was held. Defendant waived preliminary hearing. The part of Point III that asserts error on the basis of § 478.240.2(2) is denied.

Defendant further argues that the trial court erred by not granting his motion that the trial judge recuse because "the trial judge showed a clear bias against the defendant requiring recusal." As this court perceives defendant's argument, he contends the trial judge demonstrated bias by (1) requiring defendant to wear a surgical mask when defendant appeared in court July 14, 2005, in Newton County, prior to the change of venue to McDonald County; (2) failing to follow the defendant's recommendation regarding where to send the case upon granting change of venue; (3) making a remark regarding defendant's trial counsel making multiple objections directed to the trial court's jurisdiction after the trial court noted the objection to jurisdiction would be a "continuing objection"; and (4) failing to sustain hearsay objections by defendant's trial counsel.

■ (1) *Surgical mask.* Defendant refers this court to a pre-trial proceeding conducted July 14, 2005, some six months prior to trial. At the beginning of the proceeding, defendant's trial counsel stated he wished to be heard about a matter prior to defendant appearing. Defendant's attorney's remarks included "an objection to [defendant] appearing with the surgical mask that he [had] on in front of the camera." Apparently there was a camera in the courtroom in that defendant's trial counsel observed that he had not received "evidence of the request by the media to have cameras present." Following the attorney's remarks, the trial judge stated:

> So the record is clear, I was contacted by the sheriff's office and advised that the Defendant had, in fact, spit into the mouth of a bailiff attempting to transport the Defendant to my courtroom. I will not place at risk any individual from further attempts of the Defendant to assault any individual. I certainly have the right to control that. And certainly, the press has a right to be present. The Defendant's conduct is inexcusable, frankly, and he has caused this for himself. I assume that any ability or concern that [defendant's trial counsel] would have can be taken up in the jury

selection process and in making sure that a fair and impartial jury is present. So he will not be allowed to come to my courtroom absent the mask, because he's not going to spit on anyone. And secondly, I'm not going to exclude the press that have a right to be here because your client decided to act improperly.

The trial judge then directed that defendant be brought into the courtroom. Defendant's appellant's brief notes that "[a]ppellate counsel was not trial counsel. There is no further mention of the mask in the remaining transcripts and it appears that while the trial court required the defendant to wear the mask on July 14, 2005, it does not appear that he was so required during subsequent hearings."

 The applicable rule for allowing a change of judge for cause is Rule 32.09(c). It provides that nothing in other rules regarding peremptory rights to change of judge or for transfer of cases for assignment of another judge upon recusal on a judge's own motion "shall prohibit a judge from ordering a . . . change of judge when fundamental fairness so requires." Determination of whether to grant a request for disqualification for cause is left to the judge before whom the case is pending. "A judge's decision whether his or her own bias threatens the fundamental fairness of the proceedings is left to the court itself, and we will defer to that decision if there is no abuse of discretion. [*State v. Owens*, 759 S.W.2d 73, 75 (Mo.App.1988) ]. Further, 'a judge is entitled to the presumption that he will not undertake to preside at a trial in which he cannot be impartial.' " *State v. Cooper*, 811 S.W.2d 786, 791 (Mo.App.1991), *quoting State v. Hoeber*, 737 S.W.2d 484, 486 (Mo.App.1987). This court finds no abuse of discretion by the trial judge's denial of the request that he recuse based on the direction that defendant wear a surgical mask following the

incident the trial judge noted in the record.

 (2) *Decision concerning venue.* Defendant argues that the trial judge was biased against him because the trial judge did not accept defendant's recommendation of where the case should be sent following granting defendant's motion for change of venue, but did accept the state's recommendation that the case be transferred to the other county within the 40th Judicial Circuit.

Defendant suggested that the case be transferred to Greene County or to Pulaski County. The trial court chose not to send the case to either of those counties, but transferred the case to McDonald County. This court does not find the trial court's action in transferring the case to McDonald County to be an abuse of discretion.

 The trial court granted the change of venue application. The choice of where to send the case was a judicial decision appropriately made by the trial court. The trial court was not bound to follow defendant's recommendation. This court does not perceive the decision regarding where to transfer the case as a ruling against defendant. Regardless, even if one would characterize the choice of a county for change of venue other than that recommended by a party as a ruling against that party, "[t]he mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge." *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 247 (Mo.App.1999). *See also Youngberg v. Youngberg*, 194 S.W.3d 886, 895 (Mo.App.2006).

 (3) *Trial court's suggestion to defendant's trial counsel.* Defendant further complains about the trial court's comments at the July 14, 2005, hearing at which defendant asserted the trial judge lacked

authority to try the case because he had presided at defendant's waiver of preliminary hearing. Several times during the proceeding, defendant's trial counsel noted that he did not intend to waive any objection to the trial judge proceeding with the case. After numerous statements to that effect, the trial judge observed, "Well, let me help you understand. When you state it's an ongoing objection, the Court notes that, states that it will, as of record, be an ongoing objection, meaning you don't have to raise it each time." Defendant's trial counsel replied, "Understood." The trial judge asked, "You understand that, don't you?" The attorney answered, "I do." The trial court then completed the action required to grant the request for change of venue. Defendant has not articulated what about this exchange demonstrated bias. This court finds no basis to conclude that the trial court's remarks revealed bias against defendant.

■■■ (4) *Failing to sustain hearsay objections of defendant.* Defendant's last claim of evidence of bias is:

> During the trial the trial judge failed to sustain any defense objections to hearsay, instead overruling the objection and allowing the testimony, "not for the truth of the matter, but to show" a particular action that was taken by other individuals. In no instance did the trial judge instruct the jury that the hearsay evidence was being admitted, not for the truth, but to show subsequent conduct. The trial judge, on numerous occasions, allowed testimony that was objected to by the defendant, and then did not instruct the jury on the limited use of the testimony. Subsequently, the trial

judge did not allow the defendant to elicit the same type of testimony, instead ruling it impermissible hearsay. [References to trial transcript omitted.]

As previously noted, "[t]he mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge." *Robin Farms, Inc. v. Bartholome, supra.* Point III is denied.

### Point IV

■■■ Point IV contends "[t]he trial court erred in allowing testimony regarding defendant's membership in a gang and an investigation by the Tulsa Gang Task Force of the defendant as such testimony was inadmissible evidence [of] defendant's character and of other uncharged and/or unrelated crimes." Although Point IV refers to the trial court allowing testimony regarding gang membership, the argument that follows Point IV only identifies references by the state in opening statement and in closing argument. The argument directed to Point IV references no testimony about gang membership.[2] With respect to Point IV's complaint about references to gang membership in the opening statement and closing argument, as discussed regarding Point II, the jury was instructed in Instruction No. 2 that "[t]he opening statements of attorneys are not evidence." They were further instructed, at the conclusion of the evidence and prior to closing arguments, in Instruction No. 12, patterned after MAI–CR 3d 302.06, that the attorneys would have the opportunity to argue the case to the jury; that "[t]heir arguments are intended to help [the jury] in understanding the evidence and applying the law, but they are not evidence." As observed with respect to Point II, it is

**2.** Rule 84.04(i) requires page references to the transcript for issues to which arguments in briefs are directed. "Compliance with this subpart of the rule 'is mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions are supported by the record.'" *Pattie v. French Quarter Resorts,* 213 S.W.3d 237, 239 (Mo.App.2007).

presumed that a jury properly follows the instructions as given. *State v. Williamson*, 836 S.W.2d at 73.

■ Having failed to pursue and develop in the argument portion of defendant's brief the allegation in Point IV that testimony was adduced that defendant was a gang member and that such evidence was inadmissible evidence of defendant's character and of other uncharged and/or unrelated crimes, defendant has abandoned or waived that claim of error for purposes of appeal. Failure to pursue and develop allegations of error in the argument portion of an appellant's brief constitutes abandonment or waiver of that issue. *State v. Parker*, 890 S.W.2d 312, 319 (Mo. App.1994); *State v. Boyer*, 803 S.W.2d 132, 136 (Mo.App.1991). Point IV is denied. The judgment is affirmed.

BATES and SCOTT, JJ., concur.